**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ROBERT C. BURROW, on behalf of himself and others similarly situated, | No. _____ |
| Plaintiff, | |
| v. | CLASS ACTION COMPLAINT |
| SYBARIS CLUBS INTERNATIONAL, INC.; and RANDALL D. REPKE and CHARLENE FARRELL, | JURY TRIAL DEMANDED |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Robert C. Burrow ("Plaintiff") brings this claim as a class action under Fed. R. Civ. P. 23 against Sybaris Clubs International, Inc. ("Sybaris"), Randall D. Repke ("Repke") and Charlene Farrell ("Farrell"), (collectively "Defendants"), and in support thereof, upon personal knowledge as to himself and upon information and belief as to all other matters, alleges the following:

### I. NATURE OF THE ACTION

1.     This class action complains of the undisclosed recording and storage of all phone calls made to and from the reservations desk at a chain of "romantic getaway" motels called Sybaris Pool Suites. Every phone call made to or from the reservations desk at every one of the five Sybaris locations over the last two years has been intercepted, recorded and electronically archived without obtaining consent of either party to the calls. This ongoing conduct blatantly violates federal and state wiretapping laws; injunctive relief and recovery of damages are mandated. Moreover, due to the very sensitive nature of the wiretapped phone calls, punitive damages are necessary.

## II.  JURISDICTION AND VENUE

2.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 because Count I is brought under the Federal Wiretap Act, 18 U.S.C. § 2111. *et.*

*seq.*, and pursuant to 28 U.S.C. § 1367 because Counts II-V are supplemental to the

federal claim.

3.      Venue is proper pursuant to 28 U.S.C. § 1391.  A substantial part of the

events giving rise to Plaintiff's claims occurred in this judicial district.  Further,

Defendants reside in this judicial district for purposes of § 1391.  Also, Defendants have

used the laws within, and have done substantial business in, this judicial district in that

they promote, market and rent their motel suites in this judicial district.  The unlawful

conduct complained of herein arose in and emanated from business decisions made in

this judicial district.  Finally, there is personal jurisdiction over Defendants in this judicial

district.

## III.  PARTIES

4.      Plaintiff is a citizen of the State of Illinois.  He was employed by

Defendants as a reservation-desk employee from March 2004 to May 2007, and from

April 2008 to February 2013.

5.      Sybaris is an Illinois corporation with its principal place of business in

Arlington Heights, Illinois.  This defendant's registered agent is Thomas A. Korman, 222

North LaSalle Street, Suite 800, Chicago, Illinois 60601.  Sybaris operates motels in

Northbrook, Illinois; Frankfort, Illinois; Downers Grove, Illinois; Mequon, Wisconsin;

and Indianapolis, Indiana.  Repke is the president of Sybaris and a citizen of the State of

Illinois.  Farrell is the operations director of Sybaris and a citizen of the State of Illinois.

Repke and Farrell are majority owners of Sybaris.

## IV.  FACTUAL ALLEGATIONS

6.      Since the early 1980s, Sybaris motel suites have been marketed solely as

secluded havens for romantic interludes.  Defendants' website currently states that

"Sybaris is a romantic paradise to ignite feelings, rekindle romance and enjoy quality

time together…It is the ultimate romantic experience."  *See* http://www.sybaris.com (last

visited March 26, 2013).  More specifically, Sybaris suites have no windows or

telephones.  All suites have whirlpools, and many have private swimming pools with

slides and waterfalls, as well as steam rooms and massage chairs.  In addition to nightly

rentals, each suite can be booked separately for a four-hour period in the afternoon.

Notably, Defendants' website states that "you do not have to be married to enjoy a

getaway at the Sybaris."  *See* http://www.sybaris.com/faq.php (last visited March 26,

2013).

7.      At each of the five Sybaris locations, employees such as Plaintiff operate

the reservations desk by fielding incoming phone calls and checking in new guests.

These employees report to the general manager of their Sybaris location.

8.      Each of the five Sybaris locations has a general manager.

9.      The general managers report to officers at Sybaris' corporate headquarters,

including Repke and Farrell.

10.     In 2011, Defendants installed a new digital telephone system at corporate

headquarters and all five motel properties.  All incoming calls to the five Sybaris

locations are routed through a central processor.  The new phone system, a ShoreTel Sky

system, was intentionally configured by Defendants to automatically record every phone call that comes in to or out of the reservation desk at every Sybaris location. The system was also configured to allow Sybaris management or other employees to eavesdrop "live" on customer and/or employee phone conversations, and also had a "whisper mode" feature which allowed management to speak with an employee during a customer conversation without the customer hearing management. Recordings of the calls are archived on computer servers and can be accessed and downloaded by Defendants and other individuals remotely via a web interface. The manufacturer of Defendant's ShoreTel Sky phone system offers an add-on service called RePlay Hosted Call Recording, which can be configured to automatically record all calls and save the recordings for access and downloading via a web interface. ShoreTel Sky warns its customers on its website that they are responsible for following applicable state and federal laws regarding recording of phone calls. *See* http://www.shoretelsky.com/products/add-on-services/hosted-call-recording (last visited March 26, 2013).

11.     Participants in the Sybaris phone calls are never informed that their conversations are being recorded. Sybaris customers are not informed their calls are recorded. Sybaris employees, other than general managers, were not informed by Defendants that their phone calls were being recorded.

12.     Plaintiff received both personal and work-related phone calls while working at the reservation desk at Sybaris' Downers Grove location. For a period of at least one month after the new phone system was installed in 2011, Plaintiff had conversations on the phone that were recorded without his knowledge or consent.

Defendants never informed reception-desk employees such as Plaintiff that the new system was recording all phone calls. Rather, some employees – to the extent they ever found out – eventually learned of the across-the-board eavesdropping through casual conversations with general managers or workplace gossip. No formal notice was ever made by Company officers or owners to its employees that all phone calls were being eavesdropped and recorded.

13. It is technologically feasible for Defendants to configure their phone system to alert callers that they are being recorded. Indeed, many businesses warn customers that their phone calls may be recorded for quality control purposes. Defendants have never configured their phone system to include such a warning.

14. Defendants disclose the contents of the intercepted communications by allowing certain employees, including general managers, to access and download these recordings through company computers.

15. While the recordings are often accessed directly through the phone system's web interface, Defendants and Sybaris general managers also download individual recording files and email the files amongst themselves using the company's Google Mail system.

16. The recordings are ostensibly intended to be used for employee training and quality control purposes. For example, reservationists are "graded" weekly on their customer phone skills. Supervisors review taped phone calls to complete these weekly evaluations.

17. Recordings are also used for training new employees, *i.e.*, to show good and bad examples of customer interaction.

18.     But sometimes employees were able to listen to certain recordings for their own amusement.

19.     In the late spring or early summer of 2012, Defendants issued a memorandum to their general managers stating that "going forward," only general managers would be allowed to listen to the recorded phone calls.

20.     After recordings of phone calls are disclosed for training, quality control, entertainment or other purposes, they are not destroyed or deleted.  Indeed, there is no indication Defendants have deleted any of the phone calls recorded by the new phone system installed in 2011.  Nor is there any indication that the Company deletes the recorded calls that are circulated via e-mail.

21.     Defendants continue to intercept, record and archive all phone calls made to and from the five Sybaris locations.

22.     The recordings continue to be disclosed to general managers and other individuals, and circulated via e-mail.

**V.   CLASS ACTION ALLEGATIONS**

23.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following class:

> All persons in the United States whose oral communications were intercepted by Defendants.

Excluded from the class are Defendants; their officers and directors; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendants; any federal, state or local government entity; and any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

24.     **Numerosity**.  Upon information and belief, there are tens of thousands of class members.  The Sybaris website states that more than 50,000 couples visit its 120 suites every year.  Each suite may be rented separately in the afternoon and the evening. Accordingly, the members of the class are so numerous that their individual joinder would be impracticable.

25.     **Commonality**.  There are numerous questions of law and fact that are common to the Plaintiff and all members of the class, including, but not limited to the following:

a)  whether Defendants intercepted Plaintiff's and class members' communications;

b)  whether Defendants disclosed and used Plaintiff's and class members' intercepted communications;

c)  whether Defendants violated the applicable state and federal wiretap laws;

d)  whether Plaintiff and class members have suffered damages;

e)  whether Plaintiff and class members are entitled to statutory damages;

f)  whether Plaintiff and class members are entitled to punitive damages;

g)  whether Plaintiff and class members are entitled to injunctive relief;

h)  whether Plaintiff and class members are entitled to equitable relief.

26.     **Typicality**.  Plaintiff is a member of the class and has claims that are typical of all members of the class.  Plaintiff's claims and all of the class members' claims arise out of the same uniform course of conduct by Defendant and may be remedied under the same legal theories.

27.     **Adequacy**.  Plaintiff will fairly and adequately represent the interests of the members of the class.  Plaintiff has no conflicts of interest with or interests that are any different from those of the other class members.  Plaintiff has retained competent counsel experienced in class action and other complex litigation.

28.     **Predominance**.  Common questions of law and fact predominate over questions affecting only individual class members, and the court, as well as the parties, will spend the vast majority of their time working to resolve these common issues.

29.     **Superiority**.  A class action is superior to all other feasible alternatives for the resolution of this matter.  Individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the court and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

30.     **Manageability**.  This case is well suited for treatment as a class action and can easily be managed as a class action because evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a class-wide basis, while the allocation and distribution of damages to class members would be essentially a ministerial function.

31.     Although some class members may not want to be contacted directly regarding this action, many Sybaris customers have already consented to receive mailings and newsletters at their home addresses.  These class members may be directly issued notice of this action using Defendants' records.  Other class members, including those who have informed Defendants they do not wish to receive Sybaris mailings at their homes, may be notified via publication.

32.     Defendants have acted on grounds generally applicable to Plaintiff and class members by uniformly intercepting and disclosing their oral communications in violation of federal and state law.  Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief and punitive damages are appropriate with respect to the class as a whole.

## VI.   CAUSES OF ACTION

**COUNT I**
**Federal Wiretap Act**
**18 U.S.C. § 2511, 2520**

33.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

34.     The Federal Wiretap Act imposes liability on anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  18 U.S.C. § 2511(a).  The Act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communications through the use of any electronic, mechanical, or other device."  *Id*. at § 2510(4).  "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" has a private right of action to recover from the person or entity that engaged in the interception any relief that may be appropriate – including preliminary, equitable and declaratory relief; actual, statutory and punitive damages; and reasonable attorneys' fees and costs.  *Id*. at § 2520.

35.     Defendants intentionally intercepted Plaintiff's oral communications through the use of an electronic device.

36. Defendants disclosed and intentionally used Plaintiff's intercepted communications.

37. Plaintiff did not consent to his phone conversations being intercepted, nor did the other parties to Plaintiff's conversations.

38. As a result of Defendants' unlawful conduct, Plaintiff and members of the class have been damaged.

## COUNT II
### Illinois Eavesdropping Statute
### 720 ILCS 5/14-1 *et. seq.*

39. Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

40. Under the Illinois Eavesdropping Statute, a person commits eavesdropping when he "[k]knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation" without the consent of all parties to the conversation. 720 ILCS 5/14-2(a). The statute defines a conversation as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communications to be of a private nature under circumstances justifying that expectation." *Id*. at 5/14-1(d). The statute defines an eavesdropping device as "any device capable of being used to hear or record oral conversation...whether such conversation…is conducted in person, by telephone, or by other means." *Id*. at 5/14-1(a). "[A]ny or all parties to any conversations upon which eavesdropping is practiced…shall be entitled to" civil remedies including injunction, actual damages and punitive damages. *Id*. at 5/14-6(a)-(c).

41.     Defendants knowingly and intentionally used an eavesdropping device to record Plaintiff's oral conversations without the consent of all parties to the conversation.

42.     As a result of Defendants' unlawful conduct, Plaintiff and members of the class have been damaged.

## COUNT III
### Indiana Wiretap Act
### IN ST 35-33.5-5-4

43.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

44.     Under the Indiana Wiretap Act, "[a] person whose communications are intercepted, disclosed or used in violation" of the Act has a civil cause of action for actual damages or statutory damages; punitive damages; court costs and reasonable attorneys' fees.  IN ST 35-33.5-5-4.  "Interception" for purposes of the Act "means the intentional recording or acquisition of the contents of an electronic communication by a person other than a sender or receiver of that communication, without the consent of the sender or receiver, by means of any instrument, device, or equipment…"  IN ST 35-31.5-2-176. "Electronic Communication" for purposes of the Act "means any transfer of signs, signals, writing, images, sounds, data, oral communication, digital information, or intelligence of any nature transmitted in whole or in part by a wire…"  *Id.* at 2-110.

45.     Defendants intentionally intercepted Plaintiff's electronic communication without the consent of either the sender or receiver of that communication.

46.     As a result of Defendants' unlawful conduct, Plaintiff and members of the class have been damaged.

## COUNT IV
## Wisconsin Wiretap Act
## Wis. Stat. Ann. § 968.31

47.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

48.     The Wisconsin Wiretap Act imposes liability on anyone who "[i]ntentionally intercepts…any wire, electronic or oral communication," intentionally uses any electronic, mechanical or other device to intercept oral communication, and intentionally discloses or uses intercepted oral communications.  Wis. Stat. Ann. § 968.31(a)-(d).  The Act defines "intercept" to mean "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device."  Wis. Stat. Ann. § 968.27.  "Any person whose wire, electronic or oral communication is intercepted [or] disclosed…shall have a civil cause of action against any person who intercepts, discloses or uses…the communication" and shall be entitled to recover actual damages, statutory damages, punitive damages, costs and reasonable attorneys' fees.  Wis. Stat. Ann. § 968.31(2m).

49.     Defendants intentionally intercepted Plaintiff's oral communications through the use of an electronic device.

50.     Defendants disclosed and intentionally used Plaintiff's intercepted communications.

51.     Plaintiff did not consent to his phone conversations being intercepted, nor did the other parties to Plaintiff's conversations.

52.     As a result of Defendants' unlawful conduct, Plaintiff and members of the class have been damaged.

## COUNT V
### Invasion of Right of Seclusion

53.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

54.     The interception and disclosure of Plaintiff's oral communications without his consent constituted an unauthorized invasion or prying upon Plaintiff's seclusion.

55.     This intrusion is offensive or objectionable to a reasonable person.

56.     The matter upon which the intrusion occurred is private.

57.     The intrusion caused anguish and suffering.

## VII.  JURY DEMAND

58.     Plaintiff and members of the class request a jury trial.

## VIII.  PRAYER FOR RELIEF

59.     Plaintiff, on behalf of himself and members of the class, respectfully requests that this Court:

a)  Certify the class as requested herein, appoint Plaintiff as Class Representative and his selection of counsel as Class Counsel, and order class-wide relief;

b)  Adjudge and decree that Defendants have engaged in the conduct alleged herein;

c)  Enjoin and restrain Defendants and its officers and agents from continuing or engaging in similar conduct as alleged herein;

d)  Order that Defendants destroy all copies of recordings of intercepted oral communications made by the unlawful conduct alleged herein;

e)   Order that Defendants take down their website that contains and/or allows access to the recordings of intercepted oral communications, and destroy the data contained therein made by the unlawful conduct alleged herein;

f)   Order that Defendants pay restitution to Plaintiff and the class which would restore Plaintiff and the class to the financial position they would have been in absent Defendant's unlawful conduct;

g)   Order that Defendants pay all statutory damages as a result of their unlawful conduct;

h)   Order that Defendants pay all compensatory damages as a result of their unlawful conduct;

i)   Order that Defendants pay punitive damages as a result of their unlawful conduct;

j)   Order that Defendants pay interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

k)   Order Defendants to identify victims of its unlawful conduct;

l)   Order that Defendants are financially responsible for notifying all members of the class of the unlawful conduct set forth herein;

m)   Award attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

n)  Grant all other such relief as the Court deems necessary and proper.


Dated: March 28, 2013                        Respectfully submitted,


                                             /s/   Michael R. Karnuth_____
                                             *Attorney for Plaintiff and the Putative Class*


Clinton A. Krislov
Michael R. Karnuth
Christopher M. Hack
KRISLOV & ASSOCIATES, LTD
20 North Wacker Drive, Suite 1350
Chicago, Illinois 60606
Tel.:  (312) 606-0500
Firm ID No.: 91198

Douglas S. Miller
LAW OFFICES OF DOUGLAS S. MILLER
233 South Wacker Drive, 84th Floor
Chicago, Illinois 60606.
Tel.: (630) 220-6251

*Counsel for Plaintiff and the Putative Class*