# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT C. BURROW, on Behalf of Himself and Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SYBARIS CLUBS INTERNATIONAL, INC., *et al.,* <br><br> Defendants. | Case No. 13 C 2342 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Robert Burrow's (hereinafter, the "Plaintiff" or "Burrow") Motion for Interim Class Certification or, Alternatively, for a Protective Order [ECF No. 46]. For the reasons stated herein, the Motion is denied.

### I. BACKGROUND

Burrow used to work at the reservations desk for one of Defendant Sybaris Clubs International's five "romantic getaway" motels. (Pl.'s Mot. for Interim Class Cert. ("Pl.'s Mot."), ECF No. 46 at 2.) According to Burrow's Complaint, "[e]very phone call made to or from the reservations desk at every one of the five Sybaris locations over the last two years has been intercepted, recorded, and electronically archived without obtaining consent of either party to the calls." (Pl.'s Compl., ECF No. 1, ¶ 1.) Burrow claims that some of his calls were recorded without his

consent, and he brings this five-count putative class action complaint on behalf of himself and other Sybaris employees and customers whose calls were recorded without consent. At this point, the Court has dismissed Count II, there is not yet any certified class, and discovery on the class certification issue is ongoing.

During discovery, however, Sybaris' attorneys contacted and interviewed several Sybaris employees. Before initiating any conversations, Sybaris' attorneys gave the employees a "Consent to Interview" letter, which the employees signed if they decided to speak with the attorneys. Burrow's Motion is based on the letter's contents, and the parties' briefing on this Motion demonstrates great disagreement over what the letter says and what it means. The Court, therefore, reproduces the letter's contents in full:

> Sybaris Clubs International, Inc. ("Sybaris"), has been sued by a former employee, Robert Burrow. Mr. Burrow alleges that the recording of telephone calls by Sybaris after the installation of the new ShoreTel phone system was improper. Mr. Burrow claims that he was not aware that the reservation lines were being recorded. Mr. Burrow also claims that some employees listened to recordings of phone calls for their own amusement, and that his personal phone calls were recorded.
>
> Mr. Burrow claims that he should be able to recover damages on behalf of all employees and customers whose calls were recorded, as their representative. No court has determined that Mr. Burrow has the right to bring claims and collect money on behalf of other employees like you (or on behalf of customers). If a court agrees with Mr. Burrow, he may be

allowed represent a class of people, including you, in his action against Sybaris.

At this stage of the lawsuit, the attorneys for both sides are investigating the claims and gathering information. Attorneys for Sybaris would like to interview you to obtain information relevant to Sybaris' defense in the case. Sybaris' attorneys expect to use this information to show that Sybaris' employees knew that the reservation lines were being recorded for quality assurance purposes and could be used for "phone grades", and therefore the employees consented to the recordings. If a court agrees with Sybaris, Mr. Burrow will only be able to bring claims on his own behalf.

You are not required to speak with Sybaris' attorneys. They are not employees of Sybaris, and will not report anything you reveal in the interview to Sybaris unless you consent to the disclosure of the information or a court orders its production. Sybaris will not retaliate against you for anything say in an interview or for refusing to be interviewed. **Please be advised that your personal interests may not be the same as Sybaris' interests and information you give may limit your ability to participate in this or another lawsuit against your employer, Sybaris. If you are represented by an attorney in connection with any claims against Sybaris, please decline to be interviewed at this time.** [emphasis in original]

I, _____, have read the above Consent to Interview and understand it. I understand that I am not being represented by Sybaris' counsel, that I have the right to be represented by an attorney of my own, and that I am under no obligation to participate in an interview. I further understand that my interests could be adverse to the interests of Sybaris. I hereby consent to be interviewed by Sybaris' counsel.

[Pl.'s Mot., Ex. A]. The letter then provides a space for the employee's name and signature.

Burrow asks the Court to grant "interim class certification" or issue a protective order because, according to Burrow, the letter is misleading and coercive. Sybaris argues that the letter is proper and modeled on other communications that courts deem permissible.

## II. LEGAL STANDARD

As a general rule, each party to a potential class action has a "right" to communicate with putative class members. *E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.,* 102 F.3d 869, 870 (7th Cir. 1996). That right, however, is not unlimited, and Federal Rule of Civil Procedure 23(d) allows a court to limit communications between parties and putative class members in certain situations. *Gulf Oil Co. v. Bernarnd,* 452 U.S. 89, 100 (1981). Courts may limit communications between potential class members and parties only if the order is "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential for interference with the rights of the parties." *Id.* at 101.

The party seeking to limit communications — Burrow in this case — "bears the burden of showing that the nonmovant has engaged in coercive, misleading, or other abusive communications with the putative class." *Piekarski v. Amedisys Ill., LLC,* --- F.Supp.2d

---, No. 12-CV-7346, 2013 WL 6055488, at *2 (N.D. Ill. Nov. 12, 2013) (citing *Gulf Oil Co.,* 452 U.S. at 102). This means that Burrow must show "(1) that a particular form of communication has occurred . . . and (2) that the particular form of communication at issue . . . threatens the proper functioning of the litigation." *Bobryk v. Durand Glass Mfg. Co.,* No. 12-cv-5360(NLH/JS), 2013 WL 5574504, at *4 (D.N.J. Oct. 9, 2013). Courts are concerned particularly with parties that make "misrepresentations to putative class members or [have] attempted to discourage class members from participating in the class." *Id.* (collecting cases).

### III. ANALYSIS

There is no dispute that Sybaris's attorneys communicated with Sybaris employees. The issue here is whether that communication was abusive, coercive, or misleading in a way that threatens the proper functioning of the putative class-action litigation. Burrow argues that the letter provides a sufficiently clear record upon which the Court may limit further communications between Sybaris's attorneys and potential class members. The Court disagrees.

Several courts have considered communications similar to the letter here and have found the communications proper. For example, in *Kuhl,* the defendants' attorneys contacted some of the defendants' current employees who were also potential class members in a pending lawsuit. *Kuhl v. Guitar Ctr. Stores, Inc.,* No. 07 C 0214, 2008 WL 5244570, at *2 (N.D. Ill. Dec. 16, 2008). Before

interviewing each employee, the defendants' attorneys read a statement that informed each employee that (1) the attorney represented the employer (Guitar Center), and not the employee being interviewed, in a "potential class action" brought by former employees, (2) the "purpose of the interview is to gather as much information as possible to help Guitar Center evaluate and defend this case," (3) the information obtained from the interviews would be used to defend Guitar Center, but not for any employee-evaluation purposes, (4) the employee was part of the potential class, (5) the employee's interests could be adverse to Guitar Center's interests, (6) the employee had a right to an attorney before deciding whether to be interviewed, (7) the employee's choice to be interviewed would not benefit the employee, and (7) no action would be taken against the employee for declining the interview. *Id.*

The court found that the communication was permissible and did not justify the plaintiffs' request to suspend the interviews. *Id.* at *3–5. The court rejected the plaintiffs' argument that the communication was improper because of the "inherently coercive relationship between employer and employee." *Id.* at *4. Although the risk of coercion increases in the employer-employee context, *see, Piekarski,* 2013 WL 6055488, at *2, the court found that the existence of such a relationship was not alone enough to justify an order limiting communication or authorizing a corrective

communication. *Kuhl,* 2008 WL 5244570, at *5. Without a clear record that the defendants sought to discourage or actually discouraged employees from participating in the potential class action, the court refused to limit or stop the communications. *Id.*

Likewise, the court in *Bobryk* considered a communication that is similar in substance to the letter at issue here. *Bobryk,* 2013 WL 5574504, at *2-3. In that case, the defendant's attorneys obtained declarations from some of the defendant's employees before any decision was made regarding class certification. *Id.* at *1. Prior to obtaining the declarations, the attorneys read a "script" to employees that informed them of several things. *Id.* at *2. The script informed the employees that (1) the attorneys represented the employer in a lawsuit brought by a former employee "who alleges she was not paid properly," (2) the plaintiff sought class-action status, but that "[n]o court has determined that [the plaintiff] has the right to bring claims . . . on behalf of other employees, like you," (3) the employer "expect[ed] to use this information to show that not all hourly employees in the plant have the same experience as Plaintiff had and she should not be able to be representative for all hourly employees," (4) the employer would use the information obtained from the employees to show that the defendant "has paid its employees as required by law," (5) the employee would have a chance to review the attorneys' written summary of what was discussed, (6) the employee was not required to

speak with the attorneys and that failure to speak with them would not result in the employer retaliating against the employee, and (7) the attorneys would not share what the employees said with the employee's manager.  *Id.* at *2–3.

The court found that this communication was proper and rejected the plaintiff's request to limit the defendant's communications with its employees.  *Id.* at *3.  The court found that nothing in the script was misleading or coercive; to the contrary, the court found that the script itself was evidence that the interviews were "not coercive or abusive, and did not thwart the proper functioning of the litigation."  *Id.* at *5.  Also, the court rejected the argument that the communication was misleading because it omitted the "plaintiffs' counsel's contact information, a 'neutral advisement of Plaintiff's theory of the case,' and the right to speak with class counsel."  *Id.*  Instead, the court examined the "entirety of defendant's conduct and communications" and found that there is no "statutory rule or case law that requires defense counsel to give specific information and instructions to putative class members."  *Id.*

The letter in this case is similar to the communications in both *Bobryk* and *Kuhl*.  Like both of those cases, the letter here informed Sybaris employees that the attorneys represented Sybaris and not the employee.  The letter also advised each interviewed employee that he or she could decline the interview without any

possibility of retaliation. And although the letter here did not give Sybaris employees a perfectly neutral explanation of the case, Burrow's counsel's contact information, or the case-identifying information, the communications in *Kuhl* and *Bobryk* were deemed appropriate despite similar omissions. In short, Sybaris' attorneys appear to have drafted the letter in order to communicate with Sybaris employees while still complying with the case law in this area.

Despite the similarities discussed above, Burrow argues primarily that the letter is coercive and misleading because it states that Sybaris' attorneys "expect to use this information to show that Sybaris' employees knew that the reservation lines were being recorded." According to Burrow, this phrase tells employees what Sybaris "expect[s]" them to say if they agree to be interviewed. Burrow argues that this phrase, plus the coercive nature of an employer-employee relationship, makes the letter coercive.

This argument fails for several reasons. First, the phrase can mean one of two things. It could have the meaning Burrow ascribes to it, or that phrase could just be Sybaris' attorneys fully disclosing the purpose of their interview — that they plan on or "expect" to use the information in order to defend Sybaris. The phrase therefore is not necessarily a covert attempt to tell employees what they should say. Second, the defendants' attorneys

in *Bobryk* also told the interviewed employees that the attorneys "expect to use this information to show that not all hourly employees" were treated like the plaintiff. *Bobryk,* 2013 WL 5574504, at *2. The court there found nothing wrong with informing employees that the attorneys "expect[ed]" to use the information to disprove the plaintiff's case. *Id.* at *4. Rather, the court explicitly relied on that disclosure in finding that the communication was not coercive or abusive. *Id.* at *5. The Court agrees with the *Bobryk* court and finds nothing wrong or coercive about a letter that informs employees how the attorneys plan on using the information.

Burrow also argues that the communication at issue here is like a number of other cases in which a communication with potential class members justified court intervention. To be sure, there are plenty of instances where defendant-employers have communicated with putative class members in a coercive, misleading, or abusive manner. The cases Burrow cites, however, depict communications so extreme that they actually cut against Burrow's position, making the letter at issue in this case appear entirely benign.

For example, Burrow relies on *Hampton Hardware,* a case in which the defendant sent three separate letters to potential class members that did not sugar-coat the defendant's feelings about the

lawsuit. *Hampton Hardware, Inc. v. Cotter & Co.,* 156 F.R.D. 630, 631-32 (N.D. Tex. 1994). The letters advocated explicitly for potential class members to refuse to participate in the class because, "[b]y refusing to join the class, you save your Company time and expenses which ultimately will be returned to you in the form of your patronage dividend." *Id.* The letters also threatened potential class members, stating that "[e]very member who joins the class adds to the expense" of the lawsuit and that the "expense will, ultimately, come out of your pocket." *Id.* Finally, the letters stated that "[b]y asking you to join the class, [the plaintiff] is asking you to sue yourself." *Id.*

Unremarkably, the *Hampton Hardware* court found these letters abusive and prohibited the defendants from further contacting putative class members regarding the litigation. *Id.* at 635. The letter at issue here could not be further from the abusive letters in *Hampton Hardware*. Nothing in the letter here threatens Sybaris employees with reduced pay if they participate in the class. The letter does not tell employees that they should not participate in the class, nor does the letter mention anything about the time and cost to Sybaris in defending the lawsuit. Burrow's argument that the Sybaris letter is similar to the letters in *Hampton Hardware* fails to pass the straight-face test, and the other cases Burrow

relies on are likewise distinguishable. *See, e.g., In re School Asbestos Litig.,* 842 F.2d 671, 674–75 (3rd Cir. 1988) (involving a booklet sent to potential class members that purported to be information on asbestos from a neutral source but was in fact created by the defendants); *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1196–1203 (11th Cir. 1985) (involving a massive communication campaign shrouded in "secrecy and haste" in which the defendants contacted class members — **after the class was already certified** — to convince them to opt-out); *Waldo v. Lakeshore Estates, Inc.,* 433 F.Supp. 782, 787, 794 (E.D. La. 1977) (involving communication where the plaintiff "attempt[ed] to solicit and promote participation in the suit").

In sum, Burrow has failed to establish a clear record that demonstrates the letter was misleading or coercive to the point that it threatened the proper function of the litigation. Although Burrow cites several cases in which courts have restricted pre-certification communications, none of those cases contain communications that are similar to the letter here.

## IV. CONCLUSION

For reasons stated herein, Burrow's Motion for Interim Class Certification [ECF No. 46] is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date:10/17/2014