IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT C. BURROW, on Behalf of Himself and Others Similarly Situated, | |
| Plaintiff, | Case No. 13 C 2342 |
| v. | Judge Harry D. Leinenweber |
| SYBARIS CLUBS INTERNATIONAL, INC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Robert Burrow's Motions for (1) Class Certification [ECF No. 57], and (2) Reconsideration of the Court's February 18, 2015 Order denying Burrow's Motion to Strike Defendant Sybaris Clubs International, Inc.'s response to the class certification motion [ECF No. 70]. For the reasons stated herein, the Motion for Class Certification is granted and the Motion for Reconsideration is denied as moot.

### I. BACKGROUND

A good portion of the facts in this case are undisputed. Burrow used to work at the Reservations Desk for one of Sybaris's five "romantic getaway" resorts. The reservations desks at each of Sybaris's locations are open twenty-four hours a day, including weekends and holidays. In November 2011,

Sybaris purchased a telephone system called "ShoreTel," which allowed Sybaris to record the phone calls made to and from phones at the various reservations desks. Burrow argues that Sybaris recorded all inbound and outbound phone calls from the reservations desks without anyone's consent in violation of state and federal wiretap laws. Because Sybaris did not install the ShoreTel system at the same time for each location, Burrow seeks to represent a class of plaintiffs defined as:

> All persons who made a telephone call into or out of the reservation telephone lines at Sybaris' five locations between the following dates: (1) Downers Grove, Illinois between March 19, 2012, and April 11, 2013; (2) Northbrook, Illinois between May 11, 2012 and April 11, 2013; (3) Frankfort, Illinois between May 14, 2012 and April 11, 2013; (4) Mequon, Wisconsin between May 25, 2012 and April 11, 2013; and (5) Indianapolis, Indiana between June 15, 2012 and April 11, 2013.

Sybaris's primary argument is that it obtained consent from its employees to record their phone calls. Thus, according to Sybaris, no class plaintiff has a viable claim because, under the Federal Wiretap Act and related state laws, one party's consent to recording is a defense to either party's claim. The central issue for class certification purposes is consent.

## II. LEGAL STANDARD

"To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v.*

*Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires Burrow to prove "numerosity, typicality, commonality, and adequacy of representation." *Id.* Burrow seeks certification under Rule 23(b)(3), which also requires him to prove that: (1) the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual members; and (2) a class action is superior to other available methods of resolving the controversy. *Id.*

Burrow bears the burden of satisfying Rule 23, which is not "'a mere pleading standard.'" *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551–52 (2011)). To meet this burden, Burrow must "satisfy through evidentiary proof" each of Rule 23's elements. *Id.* In deciding a class certification motion, the Court must conduct a "rigorous analysis" before it can determine whether Burrow has satisfied Rule 23's requirements. *Id.* (internal quotation marks omitted). This means that the Court might need to resolve issues that also bear on the merits of the claim, but only if those issues overlap with class certification issues. *Id.*

Despite the need for rigorous analysis, however, "the court should not turn the class certification proceedings into a dress rehearsal for a trial on the merits." *Messner,* 669 F.3d at 811.

Instead, the Court need only consider the evidence submitted by the parties and determine whether Burrow has proven each of Rule 23's elements by a preponderance of the evidence. *Id.*

### III. <u>ANALYSIS</u>

Burrow's claims arise under the Federal Wiretap Act (the "Act") and related Indiana and Wisconsin statutes. *See,* 18 U.S.C. § 2511(a); Wisc. Stat. Ann. § 968.31; Ind. Code Ann. § 35-33.5-5-4. The differences between these statutes are not relevant for purposes of deciding this Motion because consent is the key issue in this case and each statute includes consent as a defense. Thus, for ease of reference, the Court will refer to and rely on only the relevant federal law.

The Act punishes "any person who . . . intentionally intercepts [or] endeavors to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(a). "Intercept" simply means the "acquisition of the contents of any . . . communications through the use of any . . . device." *Id.* § 2510(4). The Act also creates a private cause of action for "any person whose . . . communication is intercepted." *Id.* § 2520(a). The law provides for stiff penalties; it allows for statutory damages as well as "punitive damages in appropriate cases." *Id.* § 2520(b).

Although the Act is broadly written, there is a catch. An interception does not violate the Act "where one of the parties

to the communication has given prior consent." *Id.* § 2511(d). The parties in this case have spilled much ink in trying to paint the recording system at issue as either nefarious (according to Burrow) or innocent (according to Sybaris), but the Act does not impose any intent requirement. Instead, it punishes an interceptor for recording a call for any purpose, unless one party to the call consented.

With that background in mind, the Court will consider each of Rule 23's requirements in determining whether to certify Burrow's proposed class. The Court will start with Rule 23(b)(3)'s predominance and superiority requirements because those issues constitute the bulk of the parties' disagreement. The Court will then move on to Rule 23(a)'s requirements, if necessary.

**A. Predominance and Superiority under Rule 23(b)(3)**

When seeking to certify a class, plaintiffs must satisfy one of Rule 23(b)'s three alternatives. *Messner,* 669 F.3d at 811. Burrow seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court will discuss each requirement in turn.

### *1. Predominance*

The predominance inquiry under Rule 23(b)(3) "'trains on the legal or factual questions that qualify each class member's case as a genuine controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Messner,* 669 F.3d at 814 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)). Predominance is similar to Rule 23(a)'s typicality and commonality requirements, but "the predominance criterion is far more demanding." *Id.* (internal quotation marks omitted).

Generally, predominance is satisfied when "'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Id.* (quoting 7AA Wright and Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). In other words, "common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Id.* (internal quotation marks omitted). The presence of some individual questions is not fatal, but individual questions cannot predominate over the common ones. *Id.* To determine if a question is common, the Court must look to the evidence necessary to answer that question; if "the members of a proposed class will need to present evidence that varies from member to member" to answer the question, then the

question is an individual one.  *Id.* (internal quotation marks omitted).  Conversely, "if the same evidence will suffice for each member" to answer the question at issue, then the question is common.  *Id.*

"Analysis of predominance under Rule 23(b)(3) 'begins, of course, with the elements of the underlying cause of action.'" *Id.* (quoting *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S.Ct. 2179, 2184 (2011)).  The Wiretap Act is a broad statute meant to protect privacy fiercely.  *See, Watkins v. L.M. Berry & Co.,* 704 F.2d 577, 581 (11th Cir. 1983) (stating that the Act "expresses a strong purpose to protect individual privacy by strictly limiting the occasions on which interception may lawfully take place").  Stating a claim under the Act is thus fairly simple; Burrow must prove that Sybaris intentionally intercepted phone calls.  18 U.S.C. § 2511(1)(b).  The intent requirement under the Act "does not, however, require any intent to violate the law, or even any knowledge that the interception would be illegal." *Narducci v. Vill. of Bellwood,* 444 F.Supp.2d 924, 935 (N.D. Ill. 2006).  All that is required is that Sybaris intended to record calls.  *See, id.*

There is no dispute that Sybaris intended to record phone calls and in fact did record phone calls.  Sybaris rests its argument on the consent exception.  Consent is an affirmative defense that Sybaris bears the burden of proving.  *Valentine v.*

*WideOpen W. Finance, LLC,* 288 F.R.D. 407, 413 (N.D. Ill. 2012) (citing *Doe v. Smith,* 429 F.3d 706, 706 (7th Cir. 2005)). Sybaris argues that the consent exception should be construed broadly, based largely on the Second Circuit's opinion in *Amen* and other cases that follow that opinion. *See, e.g., Griggs-Ryan v. Smith,* 904 F.2d 112, 116 (1st Cir. 1990) ("We agree with the Second Circuit that 'Congress intended the consent requirement to be construed broadly.'") (citing *United States v. Amen,* 831 F.2d 373, 378 (2d Cir. 1987)). According to Sybaris, consent can be inferred because Sybaris employees knew generally that calls made to and from the reservations desks were being recorded.

Sybaris's argument for a broad construction of consent based on *Amen* contains a glaring, fatal flaw: the Seventh Circuit rejected *Amen* outright in *United States v. Daniels,* 902 F.2d 1238 (7th Cir. 1990). In that case, a defendant sought to suppress evidence the FBI obtained from eavesdropping on the defendant's calls from prison. *Id.* at 1245. The court considered whether the defendant's consent might be inferred when a section in the Code of Federal Regulations informed inmates their calls may be monitored and the defendant signed a form indicating that he "underst[ood] that telephone calls [he] made from institution telephones may be monitored and recorded." *Id.* (internal quotation marks omitted). The court found that

these circumstances did not indicate consent because "knowledge and consent are not synonyms." *Id.* According to the court, "[t]aking a risk is not the same as consenting to the consequences if the risk materializes." *Id.* For example, "[a] person who walks by himself at night in a dangerous neighborhood takes a risk of being robbed; he does not consent to being robbed." *Id.* The court found that this type of broad consent argument is "the kind of argument that makes lawyers figures of fun to the lay community, and although a respected sister court has accepted it [in *Amen*], we place no weight on it." *Id.* (citation omitted). Because the Seventh Circuit has rejected *Amen*'s broad construction of consent, this Court cannot give weight to Sybaris's broad consent arguments.

This does not mean, however, that consent cannot be inferred at all. Rather, "[c]onsent may be express or implied, but in either case, there must be actual consent." *United States v. Corona-Chavez,* 328 F.3d 974, 978 (8th Cir. 2003). Sybaris did not seek and did not obtain express consent until after this lawsuit started. Instead, Sybaris argues that it received implied consent when it generally informed its employees of the new ShorTel system and those employees chose to continue working for Sybaris by taking phone calls on the recorded lines.

The majority of the parties' briefing on the consent issue goes to the merits of Sybaris's consent defense, but that is not the issue before the Court. The issue is whether any individualized issues of consent threaten to overwhelm the common issues. In this case, the common questions include (1) whether Sybaris had a policy of recording all or a substantial portion of phone calls to and from reservations desks and (2) whether the phone system informed potential class members that their calls were in fact being recorded.

Sybaris claims that the individual issues related to employee consent preclude class certification, but the evidence Sybaris cites is, in fact, common to the class. There is no dispute that, prior to this lawsuit, Sybaris did not obtain individual, express consent from any employee. Instead, Sybaris argues that implied consent can be inferred by the common knowledge among its employees that their calls were being recorded, as evidenced by the various employee affidavits Sybaris submitted with its brief. This may be true, but the affidavits and testimony that Sybaris relies on would be the same evidence it would introduce if class members proceeded individually. This is especially true for non-employee class members, because Sybaris has not put forth any evidence that it even attempted to obtain consent — implied or otherwise — from customers calling in to the reservations desks. For these non-

employee class members, Sybaris would also be relying on the same affidavits and testimony that it currently relies upon in arguing that the employee a customer spoke with consented to the recording. Without this common evidence of general knowledge, Sybaris would have virtually no defense to non-employee class members' claims. And for employee class members like Burrow who would claim that they gave no consent, Sybaris would be using the same testimony from employees who allegedly did consent to impeach these employees' claims. All of this this shows that the evidence related to Sybaris's consent defense is common to the class, and just because a class might "go down in flames on the merits" does not mean that a court should refuse certification. *See, Schleicher v. Wendt,* 618 F.3d 679, 685 (7th Cir. 2010).

Moreover, the eighteen individual affidavits that Sybaris submits in support of its consent defense, which are the subject of Burrow's Motion for Reconsideration, account for less than one-third of all the potential employee class members. Thus, even assuming that those affidavits conclusively establish consent for those specific class members, the Court cannot deny class certification as to the other two-thirds of potential employee class members who might have given no form of consent. Of course, Sybaris "will not be precluded from presenting admissible evidence of individual consent if and when individual

class members are permitted to present claims," but those individual issues do not at this point appear to predominate over the common ones. *See, Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468-CAS(MANx), 2014 WL 4627271, at * 12 (C.D. Cal. Sept. 8, 2014).

The Court finds that common issues, both as to Burrow's claim and as to Sybaris's affirmative defense, predominate over any individualized issues. If it later appears that individual issues will in fact predominate, Sybaris may move to modify or decertify the class at that time. *See, Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). At this point, however, Burrow has satisfied predominance.

### *2. Superiority*

In order to certify a class under Rule 23(b)(3), the Court must also find that class treatment is superior to other ways of resolving the dispute. Rule 23(b)(3) lists the following factors the Court should consider in deciding superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Sybaris does not present a separate argument against superiority aside from its predominance argument, and for good reason. This case involves the application of similar wiretap statutes to a single system of recording phone calls. The need for class members to have individualized control is therefore minimal. And because the claims and defenses will be nearly identical, concentrating this case into a single forum is more desirable than thousands of cases all hearing the same claim involving the same recording system.

Although there are some difficulties in managing a class this size, those difficulties are not insurmountable in light of the simple nature and limited scope of the claims. This is especially true because Burrow only claims statutory damages, which removes the thorny issue of measuring damages on a class-wide basis. Thus, the Court finds superiority satisfied.

### B. Rule 23(a) Requirements

Before the Court can certify a class, Burrow must establish numerosity, commonality, typicality, and adequacy under Rule 23(a). Burrow must also demonstrate that the class is "sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012). The Court will address each requirement separately.

### *1. Ascertainability*

Burrow does not need to ascertain the identity of each class member to achieve class certification. Rather, he need only demonstrate that such members are "ascertain*able*, with class members to be identified during a claims administration process if the class prevails." *Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 245 (N.D. Ill. 2014) (internal quotation marks omitted). "A class is identifiable if class members can be ascertained based on objective criteria." *Pawelczak v. Fin. Recovery Servs., Inc.,* 286 F.R.D. 381, 385 (N.D. Ill. 2012) (internal quotation marks omitted).

As a preliminary matter, the class definition in this case seems on its face sufficiently definite. It defines a narrow scope of members whose calls were recorded at specific locations during a short period of time. Also, the definition does not pose ascertainability problems that other courts have found to preclude class certification. Membership in the proposed class, for example, is not "contingent on the state of mind of the prospective class members." *Alliance to End Repression v. Rochford,* 565 F.2d 975, 978 (7th Cir. 1977). Thus, there is nothing about the class definition itself that poses any problem for identifying class members.

In addition to being facially sufficient, Burrow has set forth several different objective ways in which to identify

class members.  Sybaris' clubs are not traditional hotels; every guest must be a "member" and pay an annual fee in order to stay at the hotel, and Sybaris assigns each member a unique identification number.  Those unique numbers can identify customers who made reservations during the class period, and Sybaris's phone logs along with those customers' own phone records can determine if they called in to Sybaris to make the reservations.  Burrow has thus demonstrated an objective way to ascertain class members.

Nevertheless, Sybaris does point out some potential issues in identifying which class members have claims.  The ShoreTel system was only able to record, at most, ten calls at a time, but Sybaris had forty-six reservation lines during the class period.  Thus, if more than ten lines were in use at any time, the additional phone lines were not recorded, and because class members' claims necessarily depend on a call being recorded, those callers would not qualify as class members.  Sybaris also notes that some customers' calls were not recorded because they were answered by a manager, whose lines were not recorded at all.  And, due to a system upgrade, Sybaris no longer has certain data that would demonstrate which calls were actually recorded.

All of this indeed poses some issues for identifying class members, but it does not demonstrate that the class members

cannot possibly be ascertained based on objective data. Rather, it demonstrates that Sybaris might be able to disqualify some class members at a later time by showing their calls were not actually recorded. And Sybaris admits that "[t]here is some information concerning the calls which were recorded, but it is not complete." (Def.'s Mem. in Opp. to Class Cert. (Def.'s Opp.") at 14, ECF No. 64). Sybaris therefore admits that objective criteria exist to identify at least some class members. Although Sybaris might be able to disqualify potential class members by showing their phone calls were not actually recorded, Sybaris would be doing so based on objective data. Thus, membership (or non-membership) in the class is ascertainable.

### *2. Numerosity*

There is no magic number of claims that make a case sufficiently numerous for class action purposes, but "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Ringswald v. Cnty. of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000). Sybaris's phone recording system could record, at most, ten phone calls at any given time. The class period spans approximately one year at each location, which was continuously open during the entire class period. The parties have not presented any hard numbers showing exactly how many class members called in to recorded phone lines, but

Sybaris's current IT employee confirmed in his deposition that on a single day early in the class period the ShoreTel system recorded over 300 calls. Although the IT employee indicated that this was during Sybaris's busy time of the year, the Court finds that this information suggests that the number of potential plaintiffs is in the thousands, which is sufficiently numerous for Rule 23(a) purposes.

Sybaris contends that this number is actually much lower based on its consent argument, which the Court discussed above. But for class certification purposes, the Court need not rule on the merits of Sybaris's consent defense. If it turns out that some (or all) employees gave actual consent to the recordings, then the number of class members will be reduced or rendered non-existant. At this point, however, the number of potential class members is quite large and therefore satisfies numerosity.

### 3. *Commonality*

The parties spend little time on the commonality prong, each noting correctly that commonality overlaps with predominance under Rule 23(b)(3), which is a more stringent standard. *See, Messner,* 669 F.3d at 814. Because the Court finds that common questions predominate under the stricter Rule 23(b)(3) standard, the Court also finds commonality satisfied. This case involves a single system of recording that allegedly violates federal and state wiretap laws. Sybaris's

defense is consent, which Sybaris itself admits is essentially identical under the federal and state laws at issue. Commonality is therefore satisfied.

### *4. Typicality and Adequacy*

Sybaris argues that Burrow's claim is not typical and that he cannot be an adequate class representative for two reasons. First, Sybaris argues that Burrow's claims are not typical because he is an employee, while the larger group of class members consists of customers. This is so, according to Sybaris, because "a unique consent defense" applies to employees that does not apply to customers. This argument is without merit, however, because the defense is not unique to the employee class members. Only one party need consent to a recording in order to defeat both parties' claims, 18 U.S.C. § 2511(2)(d), and Sybaris has presented no evidence whatsoever that any customers consented to the recordings. Thus, Sybaris's only defense — *to both its customers' and its employees' claims* — is that the employees all impliedly consented. Simply put, the defense is not unique at all. Thus, Burrow's claim that his calls were recorded in violation of the Act is typical of the entire class's claim.

Second, Sybaris argues that Burrow cannot be an adequate representative because of a conflict of interest. Sybaris asserts that Burrow "partook in the purported surveillance

program by listening to recorded calls during his management training." (Def.'s Opp. at 34, ECF No. 64). Because Burrow listened to some of the recorded calls, Sybaris asserts that his interests are adverse to other class members.

Sybaris is correct that a person cannot adequately represent a class when the person engaged in the very wrongdoing alleged in the Complaint. *Randall v. Rolls-Royce,* 637 F.3d 818, 824 (7th Cir. 2011) (finding that a potential class representative in a sex discrimination case could not represent the class when she participated in decisions that, under her own theory of the case, were discriminatory). But Burrow did not engage in the wrongdoing alleged. As discussed above, the Act punishes the *interception* of a communication. There is no evidence that Burrow recorded any calls on his own or had any control over Sybaris's call recording. That decision rested squarely with Sybaris. That Burrow listened to what Sybaris had previously intercepted does not transform Burrow into one who did the intercepting. It would be odd indeed if a defendant could escape liability for intercepting calls simply by playing those calls for potential class members to listen to. The claim in this case is that Sybaris recorded phone calls in violation of the Act, and Burrow is one such person whose calls were recorded. Burrow therefore appears to be a typical and adequate class representative.

## IV. CONCLUSION

For reasons stated herein, Burrow's Motion for Class Certification [ECF No. 57] is granted. The class defined herein is certified and Burrow is appointed class representative. Burrow's retained counsel, Krislov & Associates, Ltd., is hereby appointed as class counsel. Because class certification is appropriate even considering the eighteen (18) affidavits Burrow sought to strike, Burrow's Motion for Reconsideration [ECF No. 70] is denied as moot.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 4/24/2015