IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT C. BURROW, on Behalf of Himself and Others Similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SYBARIS CLUBS INTERNATIONAL, INC., *et al.*,<br><br>　　　　　　Defendants. | Case No. 13 C 2342<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment [ECF No. 121], and Defendants' Motion entitled "Position Statement on the Issue of Employee Consent" [ECF No. 120]. For the reasons stated herein, Plaintiff's Motion is denied and Defendants' Motion is granted in part and denied in part.

### I.  BACKGROUND

Plaintiff, Robert Burrow, used to work at the reservations desk for one of Defendant Sybaris Clubs International's five "romantic getaway" motels. The reservations desks at each of Sybaris's locations are open twenty-four hours a day, including weekends and holidays. In November 2011, Sybaris purchased a telephone recording system called "ShoreTel." The call

recording system enabled Sybaris and Defendants Randell Repke and Charlene Farrell to record all incoming and outgoing calls to/from each of Sybaris's reservation desks, and to store, access and email the recorded calls.

Plaintiff argues the recording of these calls was done without anyone's consent in violation of state and federal wiretap laws. Because the ShoreTel system was not installed at the same time for each Sybaris location, the Court certified a class defined as:

> All persons who made a telephone call into or out of the reservation telephone lines at Sybaris' five locations between the following dates: (1) Downers Grove, Illinois between March 19, 2012, and April 11, 2013; (2) Northbrook, Illinois between May 11, 2012 and April 11, 2013; (3) Frankfort, Illinois between May 14, 2012 and April 11, 2013; (4) Mequon, Wisconsin between May 25, 2012 and April 11, 2013; and (5) Indianapolis, Indiana between June 15, 2012 and April 11, 2013.

It appears undisputed that Sybaris did not inform its customers that telephone calls were being recorded (or obtain their consent). But the parties dispute whether the Sybaris employees consented to the recordings.

By law, if all of the employees are found to have consented to the calls being recorded, the claims of the class are extinguished. *See, e.g.,* 18 U.S.C. § 2511(d) (An interception does not violate the Federal Wiretapping Act "where one of the parties to the communication has given prior consent."). Thus,

the Court chose to divide the class into two subclasses — Sybaris employees and customers — and determine the employee consent issue before proceeding further. If it is determined that some or all of the employees did not consent to the recordings, then the nonconsenting employees and the customers will be in the same boat, and their claims can proceed together.

The parties have issued notice to, and began deposing, the employee subclass. After completing a portion of the employee depositions, the parties returned to Court and reported their progress. Plaintiff argued that the evidence gathered was sufficient to enable the Court to make a determination on the employee consent issue. Defendants contended that the Court would only be able to rule on the consent issue once *all* the employees were deposed, unless the parties stipulated as to what the remaining employees would say. The Court asked the parties to submit cross-motions outlining their positions and suggesting a course of action for the litigation going forward. Plaintiff filed the present Motion for Partial Summary Judgment; Defendants filed the present Motion entitled "Position Statement on the Issue of Employee Consent," asking the Court to either (1) consider a motion for decertification of the class, or (2) order the depositions of the remaining employees. The Court considers both Motions concurrently.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the moving party satisfies its initial burden, the non-moving party must demonstrate "that a triable issue of fact remains on issues for which nonmovant bears the burden of proof." *Knight v. Wiseman,* 590 F.3d 458, 463–64 (7th Cir. 2009).

The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In other words, summary judgment is not to be used to resolve evidentiary conflicts, but merely to identify their presence or absence. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the non-moving party. *See, Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000).

## III. ANALYSIS

The Federal Wiretap Act punishes any person who "intentionally intercepts [or] endeavors to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(a). "Intercept" simply means the "acquisition of the contents of any . . . communications through the use of any . . . device." *Id.* § 2510(4). The Act also creates a private cause of action for any person whose communication is intercepted. *Id.* § 2520(a). The law provides for statutory damages as well as "punitive damages in appropriate cases." *Id.* § 2520(b). To state a claim under the Act a plaintiff must prove that the defendant intentionally intercepted a communication. *Id.* § 2511(1)(b). The intent requirement under the Act "does not, however, require any intent to violate the law, or even any knowledge that the interception would be illegal." *Narducci v. Vill. of Bellwood*, 444 F.Supp.2d 924, 935 (N.D. Ill. 2006). Although the Act is broadly written, there is a catch. An interception does not violate the Act "where one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(d).

There is no dispute that Sybaris intended to record phone calls and in fact did record phone calls. Sybaris rests its defense on the consent exception. Consent is an affirmative defense that Sybaris bears the burden of proving. *Valentine v. WideOpen W. Finance, LLC,* 288 F.R.D. 407, 413 (N.D. Ill. 2012)

(citing *Doe v. Smith,* 429 F.3d 706, 706 (7th Cir. 2005)). Sybaris argues (and has argued since the inception of this case) that the consent exception should be construed broadly, based largely on the Second Circuit's opinion in *United States v. Amen,* 831 F.2d 373, 378 (2d Cir. 1987) and other cases that follow that opinion. *See, e.g., Griggs-Ryan v. Smith,* 904 F.2d 112, 116 (1st Cir. 1990) ("We agree with the Second Circuit that 'Congress intended the consent requirement to be construed broadly.'") (citing *Amen,* 831 F.2d at 378)).

In the class certification order, the Court relied on the Seventh Circuit's opinion in *United States v. Daniels,* 902 F.2d 1238 (7th Cir. 1990), to reject Sybaris's argument based on *Amen.* In *Daniels,* a defendant sought to suppress evidence obtained by the FBI recording his telephone calls from jail on the ground that it violated the federal wiretapping law. *Id.* at 1245. The Seventh Circuit concluded that the FBI's actions did not violate the Federal Wiretap Act because they fell within the exception for wiretapping done "by an investigative or law enforcement officer in the ordinary course of his duties." *Id.* In dicta, the court also commented on the application of the consent exception; stating that the defendant's consent could not be inferred from him signing a form indicating that he understood that his calls "may be monitored and recorded" and a provision in the Code of Federal Regulations informing inmates

their calls may be monitored. *Id.* In doing so, the court rejected the Second Circuit's holding in *Amen*. *Id.* The court remarked that "knowledge and consent are not synonyms," and "[t]aking a risk is not the same as consenting to the consequences if the risk materializes." *Id.*

Because the Seventh Circuit rejected *Amen*'s holding in *Daniels,* this Court refused to give weight to Sybaris's broad consent arguments at the class certification stage. But, as the Court acknowledged in that order, *Daniels* did not completely foreclose the possibility that implied consent may be inferred from the surrounding circumstances. The dicta from *Daniels* must be read in light of the facts at issue in that case. Prisoners are faced with the Hobson's choice of "consenting" to having their private calls recorded or being cut off from the outside world. Under such circumstances, the idea of implied consent does indeed seem ludicrous. *See, Daniels,* 902 F.2d at 1245 ("That is the kind of argument that makes lawyers figures of fun to the lay community."). The same concerns are not present in the context of an employer recording calls made by its employees. The employee is not dependent on the phone calls to interact with the outside world and does not have the same personal interest in the business calls as a prisoner has in his or her private calls.

The Court finds this case much more similar to *Griffin v. City of Milwaukee,* 74 F.3d 824 (7th Cir. 1996). There, the Seventh Circuit reviewed the district court's order granting the defendants' motion for summary judgment on the plaintiff's claim that defendants' intercepted her personal telephonic and non-telephonic conversations in violation of the Federal Wiretap Act. *Id.* at 825. The court inferred the plaintiff's consent to the alleged interception from the surrounding facts and circumstances. *Id.* at 828. Specifically, the *Griffin* court relied on the facts that: (1) the defendants informed the plaintiff that calls from her workstation might be monitored for training, evaluation, and supervision purposes; (2) the plaintiff testified in her deposition that she knew her phone calls from her workstation could be monitored by supervisors; and (3) the recording system was noticeable and obvious. *Griffin,* 74 F.3d at 828. These facts and circumstances supported an inference that the plaintiff had actual notice of the recordings and impliedly consented to them. *See, Amati v. City of Woodstock,* 176 F.3d 952, 955 (7th Cir. 1999); *Narducci v. Vill. of Bellwood,* 444 F.Supp.2d 924, 936 (N.D. Ill. 2006).

Similarly, here the Sybaris employees who have been deposed have made various admissions suggesting that they were aware their calls were being recorded, they were given actual notice of the recording system, and they continued to work without

objection.  The general managers at each of the five Sybaris locations in question stated that they provided actual notice to the employees that the calls would be recorded by the ShoreTel phone system.  *See,* Def.'s Mem., Exs. A, D, J, U.  Although all of the employees have not been deposed, of those that have, all (with the exception of Plaintiff's niece and sister) confirmed that they were informed of the recordings by their general managers before or at the time the system was activated.[1]  Even Plaintiff admitted that he learned from his general managers that the ShoreTel system recorded all calls, although he claims it was about a month after the system was installed.  Ex. HH, 115:12-22.  In addition, a total of nineteen affiants, excluding the general managers, confirmed that Sybaris gave actual notice to the employees of the ShoreTel recording system before the system was activated.[2]  Others, including Plaintiff, stated that

---

[1] *See,* Def.'s Mem., Ex. EE (Depo. of Patrick Stewart), 36:9-14, 38:20-39:3; Ex. Y (Depo. of Christie Culley), 43:17-23, 44:14-24; Ex. FF (Depo. of Ryan Stewart), 16:3-24, 17:19-18:2, 65:23-66:7; Ex. AA (Depo. of Christian Rivera), 17:20-18:10, 19:21-21:22; Ex. DD (Depo. of Richard Spandiary), 60:7-17; 68:5-69:8; Ex. BB (Depo. of Ismael Ruiz), 15:2-20, 34:18-35:22, 36:20-24; Ex. CC (Depo. of Mario Ruiz-Camarillo), 14:1-24, 15:5-10, 17:1-7, 17:17-18:7, 48:4-12.

[2] *See* Def.'s Mem., Ex. B (Annette Anderson), ¶ 6; Ex. C (Patrick Stewart), ¶ 4; Ex. E (John Baghdasarian), ¶¶ 4-5; Ex. F (Ismael Ruiz), ¶¶ 3, 5 (misnumbered as ¶ 4); Ex. G (Michelle Vanderhorst), ¶ 4; Ex. H (Christian Rivera), ¶¶ 4-5, Ex. I (Mary Anne McDonald), ¶ 4; Ex. K (Christie Culley), ¶ 4; Ex. L (Brandi Currie), ¶ 5; Ex. M (Eric Garcia), ¶ 3; Ex. N (Jennifer

the recordings were common knowledge.  *See, e.g.,* Def.'s Mem., Ex. HH, 108:22-109:7; 115:12-22; Ex. B, ¶ 4; Ex. G, ¶ 3.  And many performed or received phone ratings on the recorded calls.  *See, e.g.,* Def.'s Mem., Ex. C, ¶ 4; Ex. F, ¶ 6 (misnumbered as ¶ 4); Ex. H, ¶ 6.  Notably, seven of the deponents even explicitly stated that they consented to the recordings.[3]

At this point, the only three witnesses to have claimed they did not receive actual notice of the recording are Plaintiff, his sister and his niece.  But even these three outliers have made admissions from which the Court would be inclined to infer that they impliedly consented to the recordings.  For example, although Plaintiff claimed he was never "formally notified" that the ShoreTel system recorded calls, he admitted that:  (1) the recordings became "common knowledge" within a month after the system was installed, Def.'s Mem., Ex. HH, 108:22-109:7; 115:12-22; (2) he learned about the recordings from his general manager, *id.* at 124:20-125:5; and

_____

Spriesch), ¶ 4; Ex. O (Bridget Kimmons), ¶ 3; Ex. P (John Kuchler), ¶ 3; Ex. Q (Fred Wahlen), ¶ 4; Ex. R (Jessica Baker), ¶ 4; Ex. S (Victor Covarrubias), ¶ 4; Ex. T (Denise Fischer), ¶ 4; Ex. V (Camille Green), ¶ 4; Haizlip Ex. W (Danielle Adrianna), ¶ 4.

[3] *See,* Def.'s Mem., Ex. FF, 24:2-9; Def.'s Mem., Ex. EE, 38:9-13, 38:20-39:1; Def.'s Mem., Ex. GG (Depo. of Jonathan Upton), 21:21-24; Def.'s Mem., Ex. DD, 30:14-18; Def.'s Mem., Ex. BB, 50:22-51:2; Def.'s Mem., Ex. AA, 24:4-17; and Def.'s Mem., Ex. Y, 47:9-24.

(3) he listened to recorded calls with his manager as part of informal management training he received, *id.* at 175:12-177:17. Similarly, Plaintiff's niece, Amanda Burrow, denied being informed of the recording system, but acknowledged that she: (1) was advised when she was hired that her calls would be recorded and she would receive phone grades as part of her job, Def.'s Mem., Ex. X, 16:4-15; (2) had no objection to her calls being recorded (other than her personal calls), *id.* at 24:2-25:1; (3) assumed calls would be recorded after the installation of the ShoreTel system, *id.* at 31:19-32:18; and (4) continued making personal calls after becoming aware of the recordings, *id.* at 21:4-12. Plaintiff's sister, Teresa Franczak, also denied being informed of the recordings until after this action was filed, but she admitted that she accessed recorded calls on her manager's computer after the ShoreTel system was installed to train new employees. Def.'s Mem., Ex. Z, 19:8-25:20, 61:5-22.

Under such circumstances, the evidence suggests that the majority of the Sybaris employees impliedly consented by continuing to make phone calls despite having actual notice of Sybaris's use of the ShoreTel system. *See, Amati,* 176 F.3d at 955 ("If there is actual notice . . . there will normally be implied consent."); *Narducci,* 444 F.Supp.2d at 936 ("[C]onsent need not be explicit, but may rather be implied from "actual

notice" of the interception."). But the Court is not in a position to make such a factual determination because there are a number of employees who have not yet been deposed, and the parties were unwilling or unable to stipulate as to what those individuals will say. If the remaining employees testify consistently with the majority of their colleagues, then the claims will fail. *See,* 18 U.S.C. § 2511(d). If the remaining employees testify to an experience similar to that of the three outliers, there will be a question of fact as to whether the Sybaris employees received actual notice of the recordings, in light of the Court's view of implied consent herein discussed.

The Court is baffled by Plaintiff's request for partial summary judgment on the facts presented; viewing the evidence in the light most favorable to Defendants (as the nonmoving party) it is puzzling as to how this evidence could show undisputedly a lack of implied consent. Moreover, Plaintiff's arguments in favor of a more stringent test for implied consent are flawed. First, the cases cited by Plaintiff discussing the Fourth Amendment and the consent standard for informants in the criminal context have no application to the facts at hand. Further, Plaintiff fails to cite any support for his suggestion that control of the call recording capabilities and/or knowledge of the extent of the recording capabilities is required before an individual can validly consent to being recorded. It is not

clear to the Court that these considerations are even relevant in determining whether consent has been conferred. An individual can consent to being recorded despite not being fully aware of the wiretap laws, the meaning of legal consent or her right to refuse to consent. And finally, just because the employees' testimony regarding their consent was obtained after the fact does not mean their consent is post-hoc; a deponent may, and is often required to, recount past occurrences. Based on the evidence presented thus far, the Court sees no reason why the Sybaris employees could not validly consent to the recordings.

## IV. CONCLUSION

For reasons stated herein, Plaintiff's Motion for Partial Summary Judgment [ECF No. 121] is denied. Defendants' Motion [ECF No. 120] is granted in part and denied in part. The parties are ordered to complete the remaining employees' depositions.

**IT IS SO ORDERED.**

		Harry D. Leinenweber, Judge
		United States District Court

Dated: 6/10/2016