## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ROBERT C. BURROW, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>SYBARIS CLUBS INTERNATIONAL, INC.; and RANDELL D. REPKE and CHARLENE FARRELL,<br><br>        Defendants. | No. 13-cv-02342<br><br><br>Honorable Harry D. Leinenweber |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
## CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM

*Class Counsel*

Clinton A. Krislov
Christopher M. Hack
Krislov & Associates, Ltd.
20 N. Wacker Dr., Suite 1300
Chicago, Illinois 60606
(312) 606-0500

*Additional Plaintiff's Counsel*

Michael R. Karnuth
Law Offices of Michael R. Karnuth
3416 N. Albany Ave.
Chicago, Illinois 60618
(312) 391-0203

## I.  <u>INTRODUCTION</u>

Plaintiff respectfully moves the Court for preliminary approval of the class action settlement ("Settlement") reached between Named Plaintiff and Class Representative Robert Burrow ("Plaintiff" or "Burrow"), Settlement Consumer Class Representative Fred Jarosh ("Jarosh") (together "Plaintiffs") and Defendants Sybaris Clubs International Inc. ("Sybaris"), Randell D. Repke ("Repke") and Charlene Farrell ("Farrell").  The proposed Settlement would resolve all claims in the above-titled action.  Plaintiff alleges that Defendants intercepted and recorded calls on reservation desk telephone lines at Sybaris' five locations during an approximately one-year period without Plaintiff's or Class Members' prior consent, in violation of the federal Wiretap Act, 18 U.S.C. §2510 *et seq.*; the Illinois Eavesdropping Statute, 720 ILCS 5/14-1 et seq.; the Indiana Wiretap Act, IN STAT 35-33-5-4; the Wisconsin Wiretap Act, Wis. Stat. Ann. § 968.31; and Invasion of the Right of Seclusion.  Defendants vigorously deny Plaintiff's claims.

Under the Settlement Agreement, Defendants will be required to pay $200,000 into a settlement fund ("Fund").  Eligible Class Members who file qualified claims will receive a per capita cash payment from this Fund (after deduction of attorneys' fees and expenses, service awards and costs of notice and administration), subject to *cy pres* distribution only if the amount payable to each class member is less than $10.00.  Not a single penny of the Fund will revert back to Defendants.  Defendants also agree to destroy all recorded telephone calls saved or stored prior to the filing of this complaint and prior to Defendants implementing a prerecorded message notifying incoming callers that the call may be recorded.  Defendants also agree that this litigation also caused other non-monetary, injunctive relief benefits to the Class including operational changes to their call recording program, such as ceasing to record all outbound reservation line telephone calls, implementing a prerecorded message informing customers calling into the

reservation lines that the calls may be recorded, and informing and obtaining written consent from each Sybaris reservation desk employee that all calls may be recorded.

This action has been vigorously litigated for over three years, with settlement being reached only after completion of substantial discovery (including thousands of documents, numerous written discovery responses, and fifteen depositions, including the depositions of Named Plaintiff and the Individual Defendants), after receiving numerous substantive decisions from this Court, and involves sharply opposing positions on many issues, including one critical one – whether Sybaris' employees who answered reservation calls with knowledge that the calls were or may be recorded impliedly consented and their consent extinguished not only their own wiretap claims but also the claims of the Sybaris customers with whom they spoke. The Court grappled with that issue on several occasions and, although it had not entered a definitive ruling, it indicated that it was one that posed significant risk to Plaintiffs' individual and class claims. The Court also ruled that the parties would need to complete the depositions of all the remaining employee subclass, totaling 53 more depositions, which increased Plaintiffs' cost/benefit risk associated with the case, given Defendants' representations regarding their financial condition and significant issues as to whether Plaintiffs' claims are covered by Defendants' insurance.

Despite these disagreements and considering the risks of litigation, the parties reached settlement after participating in robust mediation before the Honorable Wayne R. Andersen (Ret.) of JAMS, a subsequent settlement conference with this Court and prior and subsequent settlement discussions among counsel.

With this motion, Plaintiffs seeks preliminary approval of the Settlement and approval of the proposed notice of the Settlement to the certified Class (as certified on April 24, 2015, and modified on August 13, 2015 for the provision of subclasses of employees and customers) and an

opportunity to opt-out, object, or otherwise be heard. The proposed Settlement satisfies all criteria for preliminary settlement approval under Seventh Circuit law.

## II.     STATEMENT OF THE FACTS

### A.     Procedural Background

On March 28, 2013, Plaintiff filed his class action complaint against Defendants. Dkt. No. 1. Plaintiff alleged that Defendants tape recorded all telephone calls into and out from their five reservation desk telephone lines without the prior consent of Sybaris' customers or employees. Dkt. No. 1, ¶ 1. Plaintiff brought claims under the federal Wiretap statute, 18 U.S.C. §2510 *et seq*., and under the wiretap laws of the three states within which Defendants do business - Illinois, Wisconsin and Indiana, and for Invasion of the Right of Seclusion.

 On November 8, 2013, this Court denied Defendants' motion to dismiss Plaintiff's complaint on grounds that the recordings were excepted from the Federal Wiretap statute's business extension exemption, and because the Illinois statute was unconstitutional. Dkt. No. 31. On June 10, 2014, this Court granted Defendants' motion to reconsider its November 8, 2013 ruling as to the Illinois wiretap statute, dismissing Plaintiff's Illinois wiretap statue claims because the Illinois Supreme Court had found that statute unconstitutional in its decisions in *People v. Melongo*, 2014 IL 114852 (March 20, 2014) and *People v. Clark*, 2014 IL 115776 (March 20, 2014). Dkt. No. 42.

On December 2, 2013, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Complaint. Dkt. No. 33. Therein, Defendants asserted defenses including that they obtained prior consent from Plaintiff and all of their other employees for all calls allegedly placed to or from their reservation desks. Dkt No. 33.

The parties engaged in extensive written and document discovery on the merits and for class certification, including on the consent issue. Several sets of written discovery responses and

thousands of documents were produced by Defendants, including large call data files. The parties held numerous discovery conferences on Defendants' production. Depositions of the two named defendants, the named plaintiff and two Sybaris technology employees were also taken prior to the parties submitting briefs on class certification.

On April 24, 2015, the Court granted Plaintiff's motion for class certification, certifying the following Class:

> All persons who made a telephone call into or out of the reservation telephone lines at Sybaris' five locations between the following dates: (1) Downers Grove, Illinois between March 19, 2012 and April 11, 2013; (2) Northbrook, Illinois between May 11, 2012 and April 11, 2013; (3) Frankfort, Illinois between May 14, 2012 and April 11, 2013; (4) Mequon, Wisconsin between May 25, 2012 and April 11, 2013; and (5) Indianapolis, Indiana between June 15, 2012 and April 11, 2013.

Dkt. No. 83-84.

On August 13, 2015, the Court denied Defendants' motion to reconsider its class certification ruling, but granted Defendants' alternative request to subclass the case into customer class members and employee class members. Dkt. No. 99. The Court also instructed the parties to issue notice of the class certification order to employee class members only, not customer class members, and allowed Defendants to take the depositions of all employee subclass members (which totaled 64 people) on the issue of whether they expressly or impliedly consented to Defendants tape recording telephone calls at the reservation desks. *Id.* The Court agreed with Defendants that resolving the consent issue as to Sybaris subclass employees would resolve the consent issue for all class members, including Sybaris customers who spoke with those employees, because the remaining legal claims (under the Federal Wiretap statute and the state wiretap statutes of Wisconsin and Indiana) required only one-party consent.

Afterwards, the parties issued notice to all employee class members (former Sybaris reservation desk employees who were employed during the class period) and prepared for and scheduled the depositions of the employee subclass members.  The parties completed ten depositions of current and former Sybaris employees before seeking the Court's view on the appropriate legal standard for establishing consent under the federal Wiretap Act and whether the standard the Court identified would constitute consent by these deposed employees.  Plaintiff filed a motion for partial summary judgment and Defendants filed a position statement on the issue of consent.

On June 10, 2016, the Court denied Plaintiff's motion for summary judgment and agreed with Defendants' position that consent can be implied from employees' knowledge of recording, and indicated that evidence was sufficient to conclude that certain employees who, during depositions, testified that they continued to use the telephones after having some understanding that the reservation telephone lines were or would be recorded and/or who testified that they consented to the recordings, did impliedly consent to the recording.  The Court concluded that it could not rule that all of the members of the employee class impliedly consented without further evidence.  Dkt. Nos. 138-39.  Plaintiff sought reconsideration of the Court's June 10, 2016 ruling or, alternatively, leave to file an interlocutory appeal, which the Court denied on July 13, 2016.  Dkt. No. 143.  The Court denied another request from Plaintiff for leave to file interlocutory review of the consent issue on September 21, 2016, Dkt. No. 149, and instructed the parties to complete the remaining employee depositions (which amounted to approximately 53 people across three states).

As explained below, during this process, the parties continued settlement communications, including with this Court, and ultimately agreed to the terms set forth herein.

**B.**     **The Parties' JAMS Mediation and Settlement Conference With This Court**

In December 2013, the parties participated in a settlement conference with Sybaris' counsel and counsel for one of Sybaris' insurance carriers. The meeting ended with no resolution.

In July 2015, the parties participated in a two-day, in-person mediation session before the Honorable Wayne R. Andersen (Ret.) of JAMS. Prior to the mediation, Defendants and Plaintiff submitted mediation briefs to Judge Andersen, setting forth their respective views on the strengths of their cases, including the risk associated with the consent issue. At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class, as well as Defendants' claimed inability to pay a significant judgment and the applicability of coverage from Defendants' insurance carriers. The mediation ended without resolution.

On September 7, 2016, the Court held a settlement conference at which the parties submitted demands and offers. Dkt. No. 148. Although the parties did not resolve the case during that conference, the monetary terms this Court recommended at the conference were ultimately agreed to and made part of this Settlement. The parties' post-conference negotiations included other settlement terms as well as stated herein.

**C.**     **The Proposed Settlement**

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as Exhibit 1 (Agreement). For purposes of preliminary approval, the following summarizes the Agreement's terms:

    **1.**     **The Settlement Class**

The Settlement Class is defined as the class certified by this Court on April 24, 2015, which is defined as follows:

> All persons who made a telephone call into or out of the reservation telephone lines at Sybaris' five locations between the following dates: (1) Downers Grove, Illinois between March 19, 2012 and

> April 11, 2013; (2) Northbrook, Illinois between May 11, 2012 and
> April 11, 2013; (3) Frankfort, Illinois between May 14, 2012 and
> April 11, 2013; (4) Mequon, Wisconsin between May 25, 2012 and
> April 11, 2013; and (5) Indianapolis, Indiana between June 15, 2012
> and April 11, 2013.

Agreement I(G).[1]  The Class is estimated to comprise approximately 70,000 people.

### 2.  Monetary Relief for Settlement Class Members

The Settlement requires Defendants to create a non-reversionary Settlement Fund of $200,000.  Agreement III(B).  Out of this Fund, eligible Settlement Class Members who file a qualified claim will receive a Cash Award in the form of a cash payment.  *Id*. at III(B)(1).  The amount of each Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims.  *Id*.  No amount of the Settlement Fund will revert to Defendants.  *Id.* at III(D).  The amount available to pay class members on valid and timely submitted claims will be the Settlement Amount ($200,000) less approved attorneys' fees and expenses, Court-approved incentive awards to the two settling class representatives, and costs of notice and claims administration.

In order to exercise the right to obtain the relief outlined above, Class Members need only complete a simple, one-page claim form (subject to Defendants' verification that a call was made to Sybaris reservation lines) and provide it to the Claims Administrator via the Settlement Website or by mail.  *Id*. at VII(A).  Class Members shall be notified of the settlement within seven (7) days after an order granting preliminary approval (*id.* at VI(A)(1)), and will have sixty (60) days following entry of the order of preliminary approval to submit their claim forms.  *Id*. at II(D).

---

[1] Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family. *Id*.

Likewise, if Class Members wish to object to or opt out of the Settlement, they will have fifty (50) days following entry of the order of preliminary approval to do so. *Id*. at II(V).

### 3. *Cy Pres* **Distributions**

In the event that the number of class members who submit valid and timely claim forms results in the per-class-member distribution being below $10.00 per class member, there will not be a Distribution to Class Members and, instead, the entire amount distributable to class members shall be distributed instead *cy pres* to a charity or charities selected by Class Counsel but subject to this Court's approval. Accordingly, no amount of the Settlement Fund will revert to Defendants.

### 4. **Non-Monetary Benefits**

Defendants agree to destroy all recordings of telephone calls inbound and outbound from Defendants' reservation desk lines made before the filing of Plaintiff's Complaint and prior to implementing in April 2013 a prerecorded announcement informing all inbound callers that calls may be recorded (*i.e*., calls recorded during the class period).

Defendants also acknowledge that as a result of Plaintiff's lawsuit, Defendants made several operational changes to their call recording program. Defendants ceased recording outbound calls from all their reservation desk lines. Defendants implemented in April 2013 a prerecorded message to all inbound calls informing callers that calls may be recorded. Finally, Defendants also implemented in April 2013 a practice of notifying employees that calls at the reservation desks may be recorded and required current and future employees to sign forms stating that they consent to the recording of calls.

### 5. **Class Release**

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will

release all claims that arise out of or are related in any way to the recording of inbound and outbound telephone calls at Sybaris' reservation desks during the class period. *Id*. at Section X.

### 6. <u>Class Representative Service Award</u>

The parties agree to support the Court's grant of a service award from the Settlement Fund for Plaintiff Robert Burrow, a former Sybaris employee, of $2,500, for his role and involvement in this case, and to class member Fred Jarosh, a Sybaris customer, of $1,000, who agreed to be added as a named plaintiff (which this Court denied when Plaintiff sought to amend his complaint to add a customer class representative, Dkt. No. 143) and who is now willing to be added as a Settlement Class Representative for the customer subclass. *Id*. at IV(B).

### 7. <u>Attorneys' Fees and Costs</u>

The parties agreed on attorneys' fees for Plaintiff's counsel of 50% of the settlement fund, or $100,000. The fee percentage was agreed upon in light of the substantial amount of time Plaintiff's counsel has expended in this case (which far exceed the amount requested) and the non-monetary benefits provided to the Class, including injunctive and other relief. The monetary relief to class members further supports Plaintiff's fee request in light of the substantial risks involved in moving forward in the case, including a likelihood that no monetary recovery would be achieved.

Prior to the Final Approval hearing, Plaintiff's Counsel will apply to the Court for an award of attorneys' fees and costs. *Id*. at IV(A). As will be addressed in Counsels' motion for attorneys' fees, courts in cases such as this award 50% in common fund contingent class settlements and it is appropriate to compensate Plaintiff's Counsel in this amount here for the work they have performed in procuring a settlement for the Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Class Members, and obtaining dismissal of the

action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *Id.* Further, the notice to the class will inform the class members that Plaintiff's counsel will seek 50% of the class benefit.

### 8.    Administration and Notice

Within seven (7) days of the entry of the Preliminary Approval Order, the Defendants will issue the short form of Class Notice and Notice of Settlement (Exhibit 2 to the Agreement) via the mode Defendants use to correspond with their Sybaris customers and current employees, and via mail to former employees at their last known address. *Id.* at VI(A)(2). All costs of notice and claims administration shall be deducted from the Settlement Fund, except that Defendants shall, at their own cost, provide direct notice of the Settlement to all Sybaris customers in their reservation database using the one of the same methods of delivery (*i.e.*, email, mail, anonymous mail, etc.) that their customers currently receive correspondence from Sybaris. *Id.* at VI(A)(2). If a customer has requested that he or she receive no communications from Sybaris, or failed to provide an email or mailing address, then Defendants shall have no obligation to provide email or mailed notice. Publication Notice will be made by Claims Administrator on one occasion in the three states where Sybaris has locations (Illinois, Wisconsin and Indiana). Class Counsel will maintain a website at which the long form notice and claim form can be found. The Claims Administrator will be Kurtzman Carson Consultants ("KCC"), subject to this Court's approval, who has already performed some administration work in this case, including sending notice to the employee subclass members. *Id.* at V(A). The Claims Administrator shall administer the Settlement, which includes the following duties: (1) accepting claim forms and (2) issuing settlement payments. *Id.*

III.     **ARGUMENT**

A.     **The Settlement Approval Process**

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion" There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here— individual litigation—would unduly tax the court system, require a massive expenditure of public

and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.*

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

> (1) the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and
>
> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. While not required, courts often consider these factors to determine whether the settlement falls within the range of possible approval at the preliminary approval stage. *See, e.g., Am. Int'l Group*, 2011 U.S. Dist. LEXIS 84219, at *33 ("[A]lthough neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage."); *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase.") In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Redman v. Radioshack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. Feb. 7, 2014) (citing *Isby*, 75 F.3d at 1199. In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

Granting preliminary approval of this Settlement will allow all Class Members to receive notice of the proposed Settlement's terms and the date and time of the final Settlement approval hearing, at which Class Members may voice approval of or opposition to the Settlement, and at which the parties and Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, at §§ 13.14, § 21.632

**B.** **The Settlement Resulted From Arm's Length Negotiations And Is Not The Product of Collusion**

As a leading treatise on class action jurisprudence explains, "decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg, §11.51. The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. Newberg, §11.42.

As detailed above, the Settlement is the result of a two-day mediation before Judge Andersen (Ret.), further contentious litigation, a settlement conference with this Court, and additional arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class actions.

Also, as detailed above, Plaintiff's Counsel thoroughly investigated and analyzed Plaintiff's claims and conducted written and oral discovery, and took 15 depositions, and thoroughly briefed issues which this Court decided. Through this process, Plaintiff's Counsel was

able to properly assess the risks of further litigation, including whether Defendants could pay a judgment after trial or an appeal.

As a result, Plaintiff's Counsel were well-positioned to evaluate the strengths and weaknesses of their case, as well as the appropriate basis upon which to settle it.

### C. The Settlement is Within the "Range of Reasonableness" for Preliminary Approval

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

#### 1. The Settlement Provides Substantial Relief for Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

##### a. The Monetary Amount offered in Settlement

The Settlement requires Defendants to pay $200,000 into a Settlement Fund. Out of this Fund, after deduction of attorneys' fees and other costs, all eligible Class Members will receive their per capita (*i.e*., dividing the net Settlement Fund by the number of claimants) share of cash payments. Agreement III(C)(1). The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits will go to Class Members—none of the Settlement Fund will return to Defendants.

Plaintiff's Counsel acknowledges that the $200,000 Fund does not constitute the full measure of statutory damages potentially available to the Class. This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation, including numerous depositions and reviewing thousands of pages of documents, and after taking into consideration the risks involved surrounding Defendants' consent defense (which this Court recognized in its orders and during the Settlement Conference), and after extensive arm's-length negotiations with an outside mediator and with this Court, during which the Court proposed the monetary amount which the parties ultimately agreed to in this Settlement.

The key here is that the Settlement provides class members with monetary relief, despite the fact that this is a purely statutory damages case in which class members incurred nominal economic damages or whose actual damages (such as to the invasion of their privacy) are difficult or impossible to quantify.

For all of the above reasons, the monetary amount recovered through the Settlement is a great result for the Class.

### b. The Strength of Plaintiff's Case

Plaintiff continues to believe that his claims against Defendants have merit and that he would make a compelling case if his claims were tried. Nevertheless, Plaintiff and the Class would face a number of difficult challenges if the litigation were to continue.

The parties strongly disagree as to whether the certified class should be decertified because of what Defendants maintain are inherently individual issues among Class Members on the issue of consent. The parties also similarly disagree on whether any class member can establish that consent did not bar their claim because, as Defendants claim, all employee subclass members impliedly or expressly consented to recording calls. Although the Court certified the class in this case, it subsequently granted Defendants' motion to divide the class into subclasses of employees and customers, and ruled, after submission of deposition testimony, that many of the employees deposed may have consented to the calls being recorded. If the parties did not settle, Plaintiff would have been required to complete another 53 employee depositions to determine if most of the remaining employees consented or not, which ran the risk for Plaintiff of expending a great deal of time and money with a very risky outcome.

Additionally, this case sought statutory damages, not actual damages, for the class, and at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations."). Thus, the amount ultimately awarded for each wiretap violation was uncertain.

Finally, there remains a risk of losing a jury trial. And, even if Plaintiff did prevail at trial, any judgment could be reversed on appeal[2].

Despite these disagreements, the parties reached settlement after extensive discovery and litigation, rulings by this Court, mediations, and a Settlement Conference with this Court. The Settlement provides substantial relief to Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Class Members would face in further litigation.

### 2. Continued Litigation is Likely to be Complex, Lengthy, and Expense

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve extensive further discovery including 53 additional employee class member depositions, motions practice on the issue of consent, possibly reconsideration of the Court's certification decision, and likely appeals of those rulings. It is likely to be more than a year before the case would proceed to trial. And any judgment in favor of Class Members could be further delayed by the appeal process. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.")

---

[2] There is also a risk that the Supreme Court's decision in *Spokeo v Robbins*, 136 S. Ct. 1540 (May 16, 2016), could be construed to bar the statutory damages claims because Plaintiff lacks Article III standing. Although Plaintiff believes there are concrete damages to recording a call without consent, as it is a violation of a substantive right (privacy), it is possible that Defendants would have pursued that defense.

### 3.     There is Currently No Opposition to the Settlement

All parties favor settlement.  But because notice has not yet been sent to the class, this factor cannot be fully evaluated prior to the final fairness hearing.

### 4.     Plaintiff's Counsel Strongly Endorse the Settlement

Plaintiff's Counsel and Plaintiff strongly endorse this Settlement.  Plaintiff's Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Plaintiff's Counsel are competent and experienced in class action litigation; (2) Plaintiff's Counsel engaged in formal discovery and extensive litigation, and exhaustively evaluated the claims in the context of settlement negotiations after numerous rulings by this Court; and (3) the Settlement was reached at arm's length through negotiations between experienced counsel, after mediation sessions and a Settlement Conference before this Court.  *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").  This factor therefore weighs in favor of preliminary approval.

### 5.     The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

The Settlement was informed by Plaintiff's Counsel's thorough litigation and analysis of the factual and legal issues involved.  Plaintiff's Counsel received extensive discovery and numerous rulings from this Court to adequately assess the risks involved in further litigation and the benefits of entering into this Settlement, to confirm that this Settlement is fair, reasonable, and adequate.  Settlement negotiations were hard-fought at arm's length.

Accordingly, the final terms of Settlement were agreed to only after Plaintiff's Counsel thoroughly vetted the claims and potential damages through the exchange of discovery, several Court rulings and participation in lengthy arm's-length negotiations.

### D.     The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra,* at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  According to the *Manual, supra,* at § 21.312, the settlement notice should do the following:

- •     Define the class;

- •     Describe clearly the options open to the class members and the deadlines for taking action;

- •     Describe the essential terms of the proposed settlement;

- •     Disclose any special benefits provided to the class representatives;

- •     Provide information regarding attorneys' fees;

- •     Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- •     Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- •     Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of plaintiff's counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibit 2 and 3 to the Agreement, satisfy all of the criteria above. The Notice Plan provides for direct, individual notice via the method Defendants use to correspond with the customers and current employees, and via mail to the last known address of their former employees. Agreement VI(A)(2). The Notice Plan also provides for publication notice one time in a newspaper in each of the three states which Sybaris maintains locations, Illinois, Wisconsin and Indiana. The Claims Administrator has already issued notice to employees and former employees in connection with notifying them of the pendency of the class action. Further notice to these class members should, thus, not be problematic.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully request that the Court do the following: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) approve the proposed Notice and Claims Program to be administered KCC; (3) direct that Notice be provided to the Class pursuant to the terms of the Agreement within seven (7) days following entry of the preliminary approval order; (4) establish a procedure for Class members to object to the Settlement or exclude themselves from the Class; (5) set a deadline fifty (50) days after the order of Preliminary Approval is entered, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the Class or seek to intervene or submit a Claim; (6) pending final determination of whether the Settlement should be approved, stay all proceedings except those related to effectuating the Settlement; and (7) schedule a hearing to consider final approval of the Settlement.

Dated: January 12, 2017

Respectfully Submitted,

By: */s/* Clinton A. Krislov

*Class Counsel*

Clinton A. Krislov
Christopher M. Hack
Krislov & Associates, Ltd.
20 N. Wacker Dr., Suite 1300
Chicago, Illinois 60606
(312) 606-0500

*Additional Plaintiff's Counsel*

Michael R. Karnuth
Law Offices of Michael R. Karnuth
3416 N. Albany Ave.
Chicago, Illinois 60618
(312) 391-0203