**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ROBERT C. BURROW, on behalf of himself and others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>SYBARIS CLUBS INTERNATIONAL, INC.; and RANDELL D. REPKE and CHARLENE FARRELL,<br><br>      Defendants. | No. 13-cv-02342<br><br><br>Honorable Harry D. Leinenweber<br><br>Magistrate Judge Susan E. Cox |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, AND FOR APPROVAL OF AN AWARD OF ATTORNEY'S FEES,
<u>REIMBURSEMENT OF COSTS, AND INCENTIVE AWARDS</u>**

Clinton A. Krislov
Christopher M. Hack
KRISLOV & ASSOCIATES, LTD
20 North Wacker Drive, Suite 1300
Chicago, Illinois  60606
(312) 606-0500

*Class Counsel*

**INTRODUCTION**

Plaintiff Robert C. Burrow ("Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this motion for final approval of class action settlement between Plaintiff and Defendants Sybaris Clubs International, Inc., Randell D. Repke and Charlene Farrell ("Defendants") and for approval of an award of attorney's fees, reimbursement of costs and incentive awards to Plaintiff and a customer Class Representative. On January 18, 2017, the Hon. Harry D. Leinenweber granted preliminary approval of the settlement. Notice to the class was issued in accordance with the preliminary approval order (*see* Declaration from Claim Administrator, Exhibit 1) and the class responded favorably to the settlement terms, with more than 600 class members timely submitting claim forms. Importantly, there were no objections to the settlement and no one opted out of the settlement. Plaintiff now seeks to complete the settlement process by asking this Court to enter an order (1) granting final approval of the settlement as fair, reasonable and adequate; (2) entering judgment and dismissing the case; (3) granting Plaintiff's request for $100,000 attorneys' fees and costs (which are far below their lodestar); and (4) approving the agreed-upon requested incentive awards to Plaintiff and a consumer Class Representative.

## I.  PROCEDURAL BACKGROUND

### A.  Nature of the Litigation

Plaintiff filed his class action complaint against Defendants on March 28, 2013. Plaintiff alleged that Defendants recorded all telephone calls into and out from their five reservation desk telephone lines without the prior consent of Sybaris' customers or employees. Plaintiff brought claims under the federal Wiretap Act, 18 U.S.C. §2510 *et seq*., and under the wiretap laws of the

three states in which Defendants do business – Illinois, Wisconsin and Indiana – and for Invasion

of the Right of Seclusion.  Defendants have denied any unlawful conduct.

### B.  Settlement and Preliminary Approval

After nearly four years of litigation, the parties have executed a class settlement

agreement which fully resolves this case and provides substantial benefits to the class.  Under the

terms of the settlement, Defendants certify that (i) within 30 days of entry of Final Order and

Judgment, they will destroy all known recordings of phone calls in their possession that were

recorded prior to the filing of this lawsuit; (ii) the unannounced recording has ceased; and (iii)

that in April 2013 a message warning callers that calls may be recorded was implemented on the

Sybaris phone system, all as a result of this suit being filed.  Defendants also agreed to pay

$200,000 in full satisfaction of settlement administration costs, attorneys' fees and costs,

incentive payments, and cash payments to eligible class members who timely submit valid

claims.  Cash payments to class members who made claims are expected to exceed $100 each.

On January 18, 2017, the Hon. Harry D. Leinenweber granted preliminary approval to the

settlement.  The matter was then referred to this Court for final approval.

### C.  Administration of the Settlement

The parties retained Kurtzman Carson Consultants LLC ("KCC") to administer the

settlement.  *See* Declaration of Jay Geraci, attached as Ex. 1.  KCC caused notice of the

settlement to be published in the Chicago Sun-Times, the Indianapolis Star, and the Milwaukee

Journal Sentinel.  *Id*.  KCC additionally set up a settlement website,

www.SybarisClassAction.com, which allowed class members to view documents regarding the

case and file claims online, and also operated a toll-free telephone number dedicated to

answering inquiries from class members.  *Id*.  In addition to KCC's notice procedures,

Defendants provided direct notice to class members via the mode Defendants use to correspond with their Sybaris customers and current employees (*i.e.*, either email or postage mail), and via mail to former employees at their last known address. Defendant sent 40,969 email notices, and 5,273 postcard notices.

The deadline for filing claims was March 19, 2017. KCC received 604 timely claims, and additional timely claims postmarked before the claims deadline may be received in the coming days. *Id.* The deadline for objecting to the settlement or requesting exclusion from the settlement class was March 9, 2017. As of March 20, 2017, KCC has received no objections to the settlement, and no requests to opt out of the settlement. *Id.*

Under the terms of the settlement agreement, Defendants established a settlement fund of $200,000. The parties agreed that Class Counsel will petition the Court for an award of attorneys' fees and expenses not to exceed $100,000, as well as incentive awards for Plaintiff and a customer Class Representative totaling $3,500. Those amounts, along with administration costs of approximately $30,000, will be deducted from the settlement amount. Accordingly, Class Counsel estimates that roughly $65,000 will be available for distribution to class members who filed timely claims. Although the final distribution amount may fluctuate due to additional timely claims, class members who have filed claims are expected to receive at least $100 each.

## II. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AS FAIR, REASONABLE AND ADEQUATE

When a proposed class-wide settlement has been reached, it must be submitted to the court for approval. Fed. R. Civ. P. 23(e)(1)(A). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996). Before approving a class action settlement, the Court must be satisfied the settlement is fair, reasonable and adequate and not a product of collusion. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 279 (7th Cir. 2002).

While charged with safeguarding the interests of the putative class, the court "must not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1005 (E.D. Wis. 2010) (citing *Armstrong v. Bd. of School Directors,* 616 F.2d 305, 315 (7th Cir. 1980)). And the possibility that a proposed settlement could have been crafted differently does not preclude approval. *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 987 (7th Cir. 2002).

When deciding whether to approve a settlement, courts must consider: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby,* 75 F.3d at 1199).

### A. The Strength of Plaintiff's Case Compared to Settlement

This is the most important settlement-approval factor. *Synfuel Techs.*, 463 F.3d at 653. Because the essence of settlement is compromise, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Here, the settlement provides meaningful benefits – including cash payments in excess of $100 for each claimant – even though Plaintiff would have faced a number of difficult challenges if the litigation continued. Although there was no dispute that phone calls were recorded, there were significant legal and factual questions as to whether Sybaris employees consented to the recording – and their legal consent would have erased the Wiretap Act claims of any customers they were recorded speaking with. While the Court certified the class in this case, it

5

subsequently granted Defendants' motion to divide the class into subclasses of employees and

customers, and ruled that many employees may have consented to recording. The issue of

employee consent would have required extensive continued litigation, and the parties faced the

risk of jury trial as well as the risk that any judgment could be reversed on appeal. With these

risks in mind, the parties reached settlement after extensive discovery and litigation, multiple

rulings on motions to dismiss and for class certification, formal mediation before retired Judge

Wayne Andersen, and a settlement conference with Judge Leinenweber. The settlement rectifies

the conduct complained of by Plaintiff, provides substantial relief to class members without

delay and is within the range of reasonableness – particularly in light of the above risks that

Plaintiff faced in further litigation.

### B. Complexity, Length and Expense of Further Litigation

A court's approval of a class settlement "allows the class to avoid the inherent risk,

complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*,

805 F.Supp.2d 560, 586 (N.D. Ill. 2011). Litigation would be lengthy and expensive if this

action were to proceed. Although the parties engaged in significant discovery efforts, continued

litigation would involve further discovery including 53 additional employee class member

depositions, motion practice on the issue of consent, possible reconsideration of the Court's

certification decision, and likely appeals of those rulings. It would have been at least a year

before the case would have proceeded to trial. Instead of facing the uncertainty of a potential

award in their favor years from now, the settlement allows Plaintiff and class members to receive

immediate and certain relief.

## C. Amount of Opposition to Settlement

All parties favor settlement. Moreover, there has been no opposition to the settlement from class members. No class members objected to the settlement, and no class member opted out of the settlement. By any measure, this should be interpreted as an overwhelmingly positive response to the settlement. Typically, the lack of objectors challenging a settlement favors a finding that the settlement is "fair and reasonable." *Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*, 235 F.Supp.2d 816, 819 (N.D. Ill. 2002). Where "silence is coupled with other indicia of fairness, it provides further support for approval." *Armstrong*, 616 F.3d at 326.

## D. Opinion of Competent Counsel

Courts are entitled to "rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325. Here, the attorneys for the parties are competent, experienced litigators and it is their shared opinion that all claims against Defendants should be settled upon the terms proposed and final approval of the settlement granted.

Plaintiff's counsel and Plaintiff strongly endorse this settlement. Plaintiff's counsel's opinion on the settlement is entitled to great weight, particularly because: (i) they are competent and experienced in class action litigation; (ii) they engaged in formal discovery and extensive litigation, and exhaustively evaluated the claims in the context of settlement negotiations after numerous rulings; and (iii) the settlement was reached at arm's length through negotiations between experienced counsel, after mediation sessions and a settlement conference before Judge Leinenweber. *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002,

1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of final approval.

### E. Stage of Proceedings and Amount of Discovery Completed

When considering this factor, the inquiry is whether "sufficient discovery has been undertaken to provide the parties with information about their respective litigation positions." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011). This litigation has lasted nearly four years. Plaintiff's counsel received extensive discovery and numerous rulings to adequately assess the risks involved in further litigation and the benefits of entering into this settlement, and to confirm that this settlement is fair, reasonable, and adequate. Accordingly, the final terms of settlement were agreed to only after Plaintiff's counsel thoroughly vetted the claims and potential damages through the exchange of discovery, several rulings and participation in lengthy arm's-length negotiations.

## III. PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE GRANTED

Plaintiff's attorneys have incurred fees of $1,873,742 (not including time incurred in preparing final approval papers as well as time that will be spent at final approval and communicating with class members throughout the claim-paying process). *See* Declaration of Christopher M. Hack, attached as Exhibit 2; Declaration of Michael R. Karnuth, attached as Exhibit 3. Additionally, Plaintiff's counsel incurred $18,244 in expenses. *Id*.

Plaintiff's request for $100,000 in attorneys' fees and expenses should be granted in light of their work securing a recovery for the class as well as obtaining valuable non-monetary relief. With a lodestar in excess of $1.8 million, Plaintiffs' fee request represents mere pennies on the dollar of work expended in this case. Moreover, because Plaintiff's counsel's costs were

$18,244, the requested fee amount of $81,756 represents 40 percent of the common fund in this case.  In awarding attorneys' fees in a common fund case such as this, "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Camden I Condominium Ass'n. Inc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  *See also McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 434-35 (7th Cir. 1977) (holding district court did not err in approving settlement in which plaintiff's counsel sought up to 50% of the fund be awarded to counsel for fees and expenses); *In re Telectronics*, 137 F.Supp.2d 1029, 1046 (S.D. Ohio 2001) (noting the range of reasonable attorney fee awards has been designated as up to 50% of the common fund); *Spicer v. Chicago Board Options Exchange, Inc.*, 844 F.Supp. 1226, 1252 (N.D.Ill.1993) (finding that attorney fee awards typically range up to 50% of the settlement fund); *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 749 (S.D.N.Y. 1985) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions.") (citations omitted); *Voth Oil Company, Inc. v. United States*, 108 Fed. Cl. 98, 106 (Dec. 20, 2012) (same); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313-14 (S.D.N.Y. 1997) (same) (citing *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979) (53% of settlement fund)), Newberg & Conte, NEWBERG ON CLASS ACTIONS, §14.03 at 14-13 (3d Ed. Dec. 1992)); *Zinman v. Avemco Corp.*, 1978 WL 5686 (E.D. Pa. Jan. 18, 1978) (granting $130,000 fee award from $260,000 settlement based on lodestar fees).

The Seventh Circuit has "consistently directed district courts to do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007).  "The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is

9

inescapably contingent." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994). Plaintiff's counsel undertook this case on a purely contingent basis, and the agreed fees represent below-market prices for their legal services. Although counsel certainly would have preferred to obtain more money for the class, this settlement has resulted in Defendants halting the practice of unannounced phone recording and will provide each claimant with around $100. The monetary relief to class members further supports Plaintiff's fee request in light of the substantial risks in further litigation, including a likelihood that no monetary recovery would be achieved. As such, Plaintiff's agreed request for reasonable attorneys' fees should be approved.

## IV.     THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED

Under the terms of the settlement and its amendment, Defendants have agreed to pay Plaintiff a service award of $2,500 for his work in initiating and pursuing this litigation on behalf of the class. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Here, the agreed-upon service award for Plaintiff is appropriate because he initiated litigation that has resulted in recovery for his fellow members of the class. Plaintiff conferred with class counsel on numerous occasions throughout the litigation, and was deposed by Defendants' counsel. Additionally, Defendants have agreed to pay $1,000 to class member Fred Jarosh, a Sybaris customer who is willing to be added as Class Representative for the customer subclass. The agreed $2,500 and $1,000 service awards are modest given that the median incentive award in class actions is $4,000. *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.REV. 1303, 1308 (2006)). *See also* Clinton A. Krislov, *Scrutiny of the Bounty: Incentive*

*Awards for Plaintiffs in Class Litigation*, 78 Ill. B.J. 286, 290 (1990) (describing incentive payments as "legitimate bounties for producing certain benefits for a class and for society"). Further supporting the award is the fact that class members were notified of the proposed service awards and no class member has objected to that request.

## CONCLUSION

For the foregoing reasons, the parties respectfully request that this Court enter an order (1) granting final approval of the settlement as fair, reasonable and adequate; (2) entering judgment and dismissing the case; and (3) granting Plaintiff's agreed request for $100,000 attorneys' fees and costs; and (4) approving the requested incentive awards to Plaintiff and Class Representative.

Dated: March 20, 2017

Respectfully submitted,

/s/ Clinton A. Krislov

*Class Counsel*

Clinton A. Krislov
Christopher M. Hack
KRISLOV & ASSOCIATES, LTD
20 North Wacker Drive, Suite 1300
Chicago, Illinois 60606
(312) 606-0500

*Additional Plaintiff's Counsel*

Michael R. Karnuth
Law Offices of Michael R. Karnuth
3416 N. Albany Ave.
Chicago, Illinois 60618
(312) 391-0203